# MERTENS ET AL. *v.* HEWITT ASSOCIATES

No. 91–1671.   Argued February 22, 1993—Decided June 1, 1993

*Alfred H. Sigman* argued the cause for petitioners. With him on the brief were *Dan Feinberg, Jeffrey W. Kobrick,* and *Joseph L. Kociubes.*

*Ronald J. Mann* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Starr, Deputy Solicitor General Mahoney, Allen H. Feldman, Nathaniel I. Spiller,* and *Mark S. Flynn.*

*Steven H. Frankel* argued the cause for respondent. With him on the brief were *Duane C. Quaini, Elpidio Villarreal, C. Lawrence Connolly III,* and *John M. Ryan.* *

JUSTICE SCALIA delivered the opinion of the Court.

The question presented is whether a nonfiduciary who knowingly participates in the breach of a fiduciary duty imposed by the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 832, as amended, 29 U. S. C. § 1001

---

*Steven S. Zaleznick* and *Cathy Ventrell-Monsees* filed a brief for the American Association of Retired Persons as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American Academy of Actuaries by *Lauren M. Bloom;* for the American Council of Life Insurance by *James F. Jorden, Waldemar J. Pflepsen, Jr., Stephen H. Goldberg, Richard E. Barnsback, Stephen W. Kraus,* and *Phillip E. Stano;* for the American Society of Pension Actuaries by *Chester J. Salkind;* and for Booke and Company et al. by *Paul J. Ondrasik, Jr., Suzanne E. Meeker,* and *Ellen A. Hennessy.*

*et seq.,* is liable for losses that an employee benefit plan suffers as a result of the breach.

## I

According to the complaint, the allegations of which we take as true, petitioners represent a class of former employees of the Kaiser Steel Corporation (Kaiser) who participated in the Kaiser Steel Retirement Plan, a qualified pension plan under ERISA. Respondent was the plan's actuary in 1980, when Kaiser began to phase out its steelmaking operations, prompting early retirement by a large number of plan participants. Respondent did not, however, change the plan's actuarial assumptions to reflect the additional costs imposed by the retirements. As a result, Kaiser did not adequately fund the plan, and eventually the plan's assets became insufficient to satisfy its benefit obligations, causing the Pension Benefit Guaranty Corporation (PBGC) to terminate the plan pursuant to 29 U. S. C. § 1341. Petitioners now receive only the benefits guaranteed by ERISA, see § 1322, which are in general substantially lower than the fully vested pensions due them under the plan.

Petitioners sued the fiduciaries of the failed plan, alleging breach of fiduciary duties. See *Mertens* v. *Black,* 948 F. 2d 1105 (CA9 1991) *(per curiam)* (affirming denial of summary judgment). They also commenced this action against respondent,[1] alleging that *it* had caused the losses by allowing Kaiser to select the plan's actuarial assumptions, by failing to disclose that Kaiser was one of its clients, and by failing to disclose the plan's funding shortfall. Petitioners claimed that these acts and omissions violated ERISA by effecting a breach of respondent's "professional duties" to the plan, for which they sought, *inter alia,* monetary relief. In opposing

---

[1] The complaint also named as defendants the plan and the PBGC, in its capacity as the plan's statutory trustee. The District Court's dismissal of these defendants was not appealed, nor was its dismissal of the PBGC's cross-claim demanding that any recovery by petitioners be paid to it.

respondent's motion to dismiss, petitioners fleshed out this claim, asserting that respondent was liable (1) as an ERISA fiduciary that committed a breach of its own fiduciary duties, (2) as a nonfiduciary that knowingly participated in the plan fiduciaries' breach of their fiduciary duties, and (3) as a nonfiduciary that committed a breach of nonfiduciary duties imposed on actuaries by ERISA. The District Court for the Northern District of California dismissed the complaint, App. to Pet. for Cert. A17, and the Court of Appeals for the Ninth Circuit affirmed in relevant part, 948 F. 2d 607 (1991).[2]

Petitioners sought certiorari only on the question whether ERISA authorizes suits for money damages against nonfiduciaries who knowingly participate in a fiduciary's breach of fiduciary duty. We agreed to hear the case. 506 U. S. 812 (1992).

## II

ERISA is, we have observed, a "comprehensive and reticulated statute," the product of a decade of congressional study of the Nation's private employee benefit system. *Nachman Corp.* v. *Pension Benefit Guaranty Corporation,* 446 U. S. 359, 361 (1980). The statute provides that not only the persons named as fiduciaries by a benefit plan, see 29 U. S. C. § 1102(a), but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets, see § 1002(21)(A), is an ERISA "fiduciary." Fiduciaries are assigned a number of detailed duties and responsibilities, which include "the proper management, administration, and investment of [plan] assets, the mainte-

---

[2] Petitioners also claimed that respondent's activities constituted a party-in-interest transaction prohibited by ERISA and professional malpractice under state law. The District Court's dismissal of the former claim was not appealed, but the Court of Appeals reversed the dismissal of the pendent claim on state-law grounds. Petitioners also sought declaratory and injunctive relief, which the District Court deemed irrelevant, given that the plan had been terminated and with it respondent's position as the plan's actuary. The Court of Appeals did not address this point.

nance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Massachusetts Mut. Life Ins. Co.* v. *Russell,* 473 U. S. 134, 142–143 (1985); see 29 U. S. C. § 1104(a). Section 409(a), 29 U. S. C. § 1109(a), makes fiduciaries liable for breach of these duties, and specifies the remedies available against them: The fiduciary is personally liable for damages ("to make good to [the] plan any losses to the plan resulting from each such breach"), for restitution ("to restore to [the] plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary"), and for "such other equitable or remedial relief as the court may deem appropriate," including removal of the fiduciary. Section 502(a)(2), 29 U. S. C. § 1132(a)(2)—the second of ERISA's "six carefully integrated civil enforcement provisions," *Russell, supra,* at 146[3]—

---

[3] Section 502(a) reads in its entirety:

"(a) Persons empowered to bring a civil action

"A civil action may be brought—

"(1) by a participant or beneficiary—

"(A) for the relief provided for in subsection (c) of this section, or

"(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

"(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

"(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

"(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of [section] 1025(c) of this title;

"(5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter; or

"(6) by the Secretary to collect any civil penalty under subsection (c)(2) or (i) or (*l*) of this section." 29 U. S. C. § 1132(a) (1988 ed. and Supp. III).

allows the Secretary of Labor or any plan beneficiary, participant, or fiduciary to bring a civil action "for appropriate relief under section [409]."

The above described provisions are, however, limited by their terms to fiduciaries. The Court of Appeals decided that respondent was not a fiduciary, see 948 F. 2d, at 610, and petitioners do not contest that holding. Lacking equivalent provisions specifying *non*fiduciaries as potential defendants, or damages as a remedy available against them, petitioners have turned to § 502(a)(3), 29 U. S. C. § 1132(a)(3), which authorizes a plan beneficiary, participant, or fiduciary to bring a civil action:

> "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan . . . ."

See also § 502(a)(5), 29 U. S. C. § 1132(a)(5) (providing, in similar language, for civil suits by the Secretary based upon violation of ERISA provisions). Petitioners contend that requiring respondent to make the Kaiser plan whole for the losses resulting from its alleged knowing participation in the breach of fiduciary duty by the Kaiser plan's fiduciaries would constitute "other appropriate equitable relief" within the meaning of § 502(a)(3).

We note at the outset that it is far from clear that, even if this provision does make money damages available, it makes them available for the actions at issue here. It does not, after all, authorize "appropriate equitable relief" *at large,* but only "appropriate equitable relief" for the purpose of "redress[ing any] violations or . . . enforc[ing] any provisions" of ERISA or an ERISA plan. No one suggests that any term of the Kaiser plan has been violated, nor would any be enforced by the requested judgment. And while ERISA contains various provisions that can be read as imposing obli-

gations upon nonfiduciaries, including actuaries,[4] no provision explicitly requires them to avoid participation (knowing or unknowing) in a fiduciary's breach of fiduciary duty. It is unlikely, moreover, that this was an oversight, since ERISA *does* explicitly impose "knowing participation" liability on cofiduciaries. See §405(a), 29 U. S. C. §1105(a). That limitation appears all the more deliberate in light of the fact that "knowing participation" liability on the part of *both* cotrustees *and* third persons was well established under the common law of trusts. See 3 A. Scott & W. Fratcher, Law of Trusts §224.1, p. 404 (4th ed. 1988) (hereinafter Scott & Fratcher) (cotrustees); 4 Scott & Fratcher §326, p. 291 (third persons). In *Russell* we emphasized our unwillingness to infer causes of action in the ERISA context, since that statute's carefully crafted and detailed enforcement scheme provides "strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." 473 U. S., at 146–147. All of this notwithstanding, petitioners and their *amicus* the United States seem to assume that respondent's alleged action (or inaction) violated ERISA, and address their arguments almost exclusively to what forms of relief are available. And respondent, despite considerable prompting by its *amici*, expressly disclaims reliance on this preliminary point. See Brief for Respondent 18, n. 15; Tr. of Oral Arg. 46. Thus, although we acknowledge the oddity of resolving a dispute over remedies where it is unclear that a remediable wrong has been alleged, we

---

[4] For example, a person who provides services to a plan is a "party in interest," 29 U. S. C. §1002(14)(B), and may not offer his services or engage in certain other transactions with the plan, §1106(a), for more than reasonable compensation, §1108(b)(2). See also §1023(d)(8) (annual reports must include certification by enrolled actuary); §1082(c)(3) (minimum funding standards for plan to be based on "reasonable" actuarial assumptions).

decide this case on the narrow battlefield the parties have chosen, and reserve decision of that antecedent question.[5]

Petitioners maintain that the object of their suit is "appropriate *equitable* relief" under § 502(a)(3) (emphasis added). They do not, however, seek a remedy traditionally viewed as "equitable," such as injunction or restitution. (The Court of Appeals held that restitution was unavailable, see 948 F. 2d, at 612, and petitioners have not challenged that.) Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory *damages*—monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of *legal* relief. *Curtis* v. *Loether*, 415 U. S. 189, 196 (1974); *Teamsters* v. *Terry*, 494 U. S. 558, 570–571 (1990); D. Dobbs, Remedies § 1.1, p. 3 (1973). And though we have never interpreted the precise phrase "other appropriate equitable relief," we have construed the similar language of Title VII of the Civil Rights Act of 1964 (before its 1991 amendments)—"any other equitable relief as the court deems appropriate," 42 U. S. C. § 2000e–5(g)—to preclude "awards for compensatory or punitive damages." *United States* v. *Burke*, 504 U. S. 229, 238 (1992).

Petitioners assert, however, that this reading of "equitable relief" fails to acknowledge ERISA's roots in the common law of trusts, see *Firestone Tire & Rubber Co.* v. *Bruch*, 489 U. S. 101, 110–111 (1989). "[A]lthough a beneficiary's action to recover losses resulting from a breach of duty superficially

---

[5] The dissent expresses its certitude that "the statute clearly does not bar such a suit." *Post*, at 265, n. 1. That, of course, is not the issue. The issue is whether the statute affirmatively *authorizes* such a suit. To meet that requirement, it is not enough to observe that "trust beneficiaries clearly had such a remedy [against nonfiduciaries who actively assist in the fiduciary's breach] at common law." *Ibid.* They had such a *remedy* because nonfiduciaries had a *duty* to the beneficiaries not to assist in the fiduciary's breach. A similar duty is set forth in ERISA; but as we have noted, only *some* common-law "nonfiduciaries" are made subject to it, namely, those who fall within ERISA's artificial definition of "fiduciary."

resembles an action at law for damages," the Solicitor General suggests, "such relief traditionally has been obtained in courts of equity" and therefore "is, by definition, 'equitable relief.'" Brief for United States as *Amicus Curiae* 13–14. It is true that, at common law, the courts of equity had exclusive jurisdiction over virtually all actions by beneficiaries for breach of trust. See *Lessee of Smith* v. *McCann*, 24 How. 398, 407 (1861); 3 Scott & Fratcher § 197, p. 188.[6] It is also true that money damages were available in those courts against the trustee, see *United States* v. *Mitchell*, 463 U. S. 206, 226 (1983); G. Bogert & G. Bogert, Law of Trusts and Trustees § 701, p. 198 (rev. 2d ed. 1982) (hereinafter Bogert & Bogert), and against third persons who knowingly participated in the trustee's breach, see *Seminole Nation* v. *United States*, 316 U. S. 286, 296–297 (1942); Scott, Participation in a Breach of Trust, 34 Harv. L. Rev. 454 (1921).

At common law, however, there were many situations—not limited to those involving enforcement of a trust—in which an equity court could "establish purely legal rights and grant legal remedies which would otherwise be beyond the scope of its authority." 1 J. Pomeroy, Equity Jurisprudence § 181, p. 257 (5th ed. 1941). The term "equitable relief" can assuredly mean, as petitioners and the Solicitor General would have it, whatever relief a court of equity is empowered to provide in the particular case at issue. But as indicated by the foregoing quotation—which speaks of "legal remedies" granted by an equity court—"equitable relief" can also refer to those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages). As memories of the divided bench, and familiarity with its technical refinements, recede further into the past, the former mean-

---

[6] The only exceptions were actions at law to obtain payment of money or transfer of chattels immediately and unconditionally due the beneficiary, see 3 Scott & Fratcher § 198—and even then the courts were divided over whether equivalent actions could also be brought in equity, see *id.*, § 198.3.

ing becomes, perhaps, increasingly unlikely; but it remains a question of interpretation in each case which meaning is intended.

In the context of the present statute, we think there can be no doubt. Since *all* relief available for breach of trust could be obtained from a court of equity, limiting the sort of relief obtainable under § 502(a)(3) to "equitable relief" in the sense of "whatever relief a common-law court of equity could provide in such a case" would limit the relief *not at all*.[7]

---

[7] The dissent argues that it would limit the relief by rendering punitive damages unavailable. *Post*, at 270–272. The notion that concern about punitive damages motivated Congress is a classic example of projecting current attitudes upon the helpless past. Unlike the availability of money damages, which always has been a central concern of courts and legislatures in fashioning causes of action, the availability of punitive damages is a major issue today, but was not in 1974, when ERISA was enacted. See *Pacific Mut. Life Ins. Co.* v. *Haslip*, 499 U. S. 1, 61–62 (1991) (O'CONNOR, J., dissenting); P. Huber, Liability 127 (1988); Ellis, Fairness and Efficiency in the Law of Punitive Damages, 56 S. Cal. L. Rev. 1, 2–3 (1982). That is particularly so for breach-of-trust cases. The 1988 edition of Scott & Fratcher cites no pre-ERISA case on the issue of punitive damages, see 3 Scott & Fratcher § 205, p. 239, n. 2; the 1982 edition of Bogert & Bogert cites two, see Bogert & Bogert § 862, p. 41, n. 12. The 1992 supplements to these treatises, however, each cite more than a dozen cases on the issue from the 1980's.

But even if Congress *had* been concerned about "extracompensatory forms of relief," *post*, at 270, it would have been foolhardy to believe that excluding "legal" relief was the way to prohibit them (while still permitting *other* forms of monetary relief) in breach-of-trust cases. The dissent's confident assertion that punitive damages "were not available" in equity, *ibid.*, simply does not correspond to the state of the law when ERISA was enacted. A year earlier, a major treatise on remedies was prepared to say only that "a majority of courts that have examined the point probably still refuse to grant punitive damages in equity cases." D. Dobbs, Remedies § 3.9, p. 211 (1973). That, of course, was speaking of equity cases *in general*. It would have been even riskier to presume that punitive damages were unavailable in that subclass of equity cases in which law-type damages were routinely awarded, namely, breach-of-trust cases. The few trust cases that *did* allow punitive damages were not exclusively actions at law. See *Rivero* v. *Thomas*, 86 Cal. App. 2d 225,

We will not read the statute to render the modifier superfluous. See *United States* v. *Nordic Village, Inc.*, 503 U. S. 30, 36 (1992); *Moskal* v. *United States*, 498 U. S. 103, 109–110 (1990). Regarding "equitable" relief in § 502(a)(3) to mean "all relief available for breach of trust at common law" would also require us either to give the term a different meaning there than it bears elsewhere in ERISA, or to deprive of all meaning the distinction Congress drew between "equitable" and "remedial" relief in § 409(a),[8] and between "equitable" and "legal" relief in the very same section of ERISA, see 29 U. S. C. § 1132(g)(2)(E); in the same subchapter of ERISA, see § 1024(a)(5)(C); and in the ERISA subchapter dealing

---

194 P. 2d 533 (1948). The two decisions upon which the dissent relies, *Fleishman* v. *Krause, Lindsay & Nahstoll*, 261 Ore. 505, 495 P. 2d 268 (1972), and *Dixon* v. *Northwestern Nat. Bank of Minneapolis*, 297 F. Supp. 485 (Minn. 1969), see *post*, at 271, held only that the breach-of-trust actions at issue could be brought at law, thus entitling the plaintiffs to a jury trial. While both decisions noted in passing that the plaintiffs sought punitive as well as compensatory damages, neither said that those damages could be obtained, much less that they could be obtained *only at law.*

The dissent's claim that the Courts of Appeals have adopted its theory that "equitable relief" was used in ERISA to exclude punitive damages, see *post*, at 272, n. 6, is also unfounded. The only opinion the dissent cites that permits punitive damages when an "equitable relief" limitation does not exist (viz., under § 502(a)(2), which permits not only "equitable," but also "remedial," relief) is *Kuntz* v. *Reese*, 760 F. 2d 926 (CA9 1985). That opinion (a) was based on the Ninth Circuit precedent we subsequently reversed in *Massachusetts Mut. Life Ins. Co.* v. *Russell*, 473 U. S. 134 (1985), see *Kuntz, supra*, at 938; (b) was formally withdrawn after being vacated on other grounds, see 785 F. 2d 1410 *(per curiam)*, cert. denied, 479 U. S. 916 (1986); and (c) has never been relied upon again, even by the Ninth Circuit.

[8] We agree with the dissent, see *post*, at 269, n. 4, that the distinction between "equitable" and "remedial" relief is artless, but do not agree that we are therefore free to consider it meaningless. "Equitable" relief must mean *something* less than *all* relief. Congress has, it may be noted, used the same language ("other equitable or remedial relief") elsewhere. See 5 U. S. C. § 8477(e)(1)(A).

with the PBGC, see §§ 1303(e)(1), 1451(a)(1).[9] Neither option is acceptable. See *Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U. S. 469, 479 (1992); cf. *Lorillard* v. *Pons*, 434 U. S. 575, 583 (1978). The authority of courts to develop a "federal common law" under ERISA, see *Firestone*, 489 U. S., at 110, is not the authority to revise the text of the statute.

Petitioners point to ERISA § 502(l), which was added to the statute in 1989, see Omnibus Budget Reconciliation Act of 1989 (OBRA), Pub. L. 101–239, § 2101, 103 Stat. 2123, and provides as follows:

> "(1) In the case of—
>
> "(A) any breach of fiduciary responsibility under (or other violation of) part 4 by a fiduciary, or
>
> "(B) any knowing participation in such a breach or violation by any other person,
>
> "the Secretary shall assess a civil penalty against such fiduciary or other person in an amount equal to 20 percent of the applicable recovery amount." 29 U. S. C. § 1132(l)(1) (1988 ed., Supp. III).

---

[9] The dissent postulates that Congress used the "legal or equitable relief" language only where the cause of action it was authorizing lacked "any discernible analogue in the common law of trusts," as a means of indicating that the courts are "free to craft whatever relief is most appropriate." *Post*, at 268–269. That is demonstrably not so. Administrative accounting requirements like the ones enforced through 29 U. S. C. § 1024(a)(5)(C) (which uses the "legal or equitable" formulation) were not unheard-of before ERISA, see 2A Scott & Fratcher § 172, p. 456, and they have an "analogue" in the basic duty of trustees to keep and render accounts upon demand by the beneficiary, see *id.*, § 172; Bogert & Bogert § 861, pp. 7–9. Moreover, in a 1986 amendment to the subchapter·dealing with the PBGC, Congress created a cause of action to enforce the provisions governing termination of single-employer plans, using the same "other appropriate equitable relief" language as appears in § 502(a)(3). See 29 U. S. C. § 1370(a)(2). That cause of action no more reflects some common-law "analogue" than do those created by the other PBGC provisions referred to in text (which employ the "legal or equitable" formulation).

The Secretary may waive or reduce this penalty if he believes that "the fiduciary or other person will [otherwise] not be able to restore all losses to the plan without severe financial hardship." § 1132(*l*)(3)(B). "[A]pplicable recovery amount" is defined (in § 502(l)(2)(B)) as "any amount . . . ordered by a court to be paid by such fiduciary or other person to a plan or its participants or beneficiaries in a judicial proceeding instituted by the Secretary under [§§ 502](a)(2) or (a)(5)." It will be recalled that the latter subsection, § 502(a)(5), authorizes relief in actions by the Secretary on the same terms ("appropriate equitable relief") as in the private-party actions authorized by § 502(a)(3). Petitioners argue that § 502(l) confirms that § 502(a)(5)—and hence, since it uses the same language, § 502(a)(3)—allows actions for damages, since otherwise there could be no "applicable recovery amount" against some "other person" than the fiduciary, and the Secretary would have no occasion to worry about whether any such "other person" would be able to "restore all losses to the plan" without financial hardship.

We certainly agree with petitioners that language used in one portion of a statute (§ 502(a)(3)) should be deemed to have the same meaning as the same language used elsewhere in the statute (§ 502(a)(5)). Indeed, we are even more zealous advocates of that principle than petitioners, who stop short of applying it directly to the term "equitable relief." We cannot agree, however, that § 502(l) establishes the existence of a damages remedy under § 502(a)(5)—*i. e.*, that it is otherwise so inexplicable that we must give the term "equitable relief" the expansive meaning "all relief available for breach of trust." For even in its more limited sense, the "equitable relief" awardable under § 502(a)(5) includes restitution of ill-gotten plan assets or profits, providing an "applicable recovery amount" to use to calculate the penalty, which the Secretary may waive or reduce if paying it would prevent the restoration of those gains to the plan; and even assuming nonfiduciaries are not liable at all for knowing partic-

ipation in a fiduciary's breach of duty, see *supra*, at 253–254, cofiduciaries expressly are, see §405(a), so there are some "other person[s]" than fiduciaries-in-breach liable under §502(l)(1)(B). These applications of §502(l) give it meaning and scope without resort to the strange interpretation of "equitable relief" in §502(a)(3) that petitioners propose. The Secretary's initial interpretation of §502(l) accords with our view. The prologue of the proposed regulation implementing §502(l), to be codified at 29 CFR §2560.502l–1, states that when a court awards "equitable relief"—as opposed to "monetary damages"—a §502(l) penalty will be assessed only if the award involves the transfer to the plan of money or property. 55 Fed. Reg. 25288, 25289, and n. 9 (1990).

In the last analysis, petitioners and the United States ask us to give a strained interpretation to §502(a)(3) in order to achieve the "purpose of ERISA to protect plan participants and beneficiaries." Brief for Petitioners 31. They note, as we have, that before ERISA nonfiduciaries were generally liable under state trust law for damages resulting from knowing participation in a trustees's breach of duty, and they assert that such actions are now pre-empted by ERISA's broad pre-emption clause, §514(a), 29 U. S. C. §1144(a), see *Ingersoll-Rand Co.* v. *McClendon*, 498 U. S. 133, 139–140 (1990). Thus, they contend, our construction of §502(a)(3) leaves beneficiaries like petitioners with *less* protection than existed before ERISA, contradicting ERISA's basic goal of "promot[ing] the interests of employees and their beneficiaries in employee benefit plans," *Shaw* v. *Delta Air Lines, Inc.*, 463 U. S. 85, 90 (1983). See *Firestone Tire & Rubber Co.* v. *Bruch, supra*, at 114.

Even assuming (without deciding) that petitioners are correct about the pre-emption of previously available state-court actions, vague notions of a statute's "basic purpose" are nonetheless inadequate to overcome the words of its text regarding the *specific* issue under consideration. See *Pen-*

*sion Benefit Guaranty Corporation* v. *LTV Corp.*, 496 U. S. 633, 646–647 (1990). This is especially true with legislation such as ERISA, an enormously complex and detailed statute that resolved innumerable disputes between powerful competing interests—not all in favor of potential plaintiffs. See, *e. g.*, *Pilot Life Ins. Co.* v. *Dedeaux*, 481 U. S. 41, 54–56 (1987). The text that we have described is certainly not nonsensical; it allocates liability for plan-related misdeeds in reasonable proportion to respective actors' power to control and prevent the misdeeds. Under traditional trust law, although a beneficiary could obtain damages from third persons for knowing participation in a trustee's breach of fiduciary duties, only the trustee had fiduciary duties. See 1 Scott & Fratcher § 2.5, p. 43. ERISA, however, defines "fiduciary" not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, see 29 U. S. C. § 1002(21)(A), thus expanding the universe of persons subject to fiduciary duties—and to damages—under § 409(a). Professional service providers such as actuaries become liable for damages when they cross the line from adviser to fiduciary; must disgorge assets and profits obtained through participation as parties-in-interest in transactions prohibited by § 406, and pay related civil penalties, see § 502(i), 29 U. S. C. § 1132(i), or excise taxes, see 26 U. S. C. § 4975; and (assuming nonfiduciaries can be sued under § 502(a)(3)) may be enjoined from participating in a fiduciary's breaches, compelled to make restitution, and subjected to other equitable decrees. All that ERISA has eliminated, on these assumptions, is the common law's joint and several liability, for *all* direct and consequential damages suffered by the plan, on the part of persons who had no real power to control what the plan did. Exposure to that sort of liability would impose high insurance costs upon persons who regularly deal with and offer advice to ERISA plans, and hence upon ERISA plans themselves. There is, in other words, a "tension between the primary [ERISA] goal of benefiting employees and the

subsidiary goal of containing pension costs." *Alessi* v. *Raybestos-Manhattan, Inc.,* 451 U. S. 504, 515 (1981); see also *Russell,* 473 U. S., at 148, n. 17. We will not attempt to adjust the balance between those competing goals that the text adopted by Congress has struck.

\*    \*    \*

The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE WHITE, with whom THE CHIEF JUSTICE, JUS-TICE STEVENS, and JUSTICE O'CONNOR join, dissenting.

The majority candidly acknowledges that it is plausible to interpret the phrase "appropriate equitable relief" as used in § 502(a)(3), 88 Stat. 891, 29 U. S. C. § 1132(a)(3), at least standing alone, as meaning that relief which was available in the courts of equity for a breach of trust. *Ante,* at 256. The majority also acknowledges that the relief petitioners seek here—a compensatory monetary award—*was* available in the equity courts under the common law of trusts, not only against trustees for breach of duty, but also against nonfidu-ciaries knowingly participating in a breach of trust, *ante,* at 256, 261, 262. Finally, there can be no dispute that ERISA was grounded in this common-law experience and that "we are [to be] guided by principles of trust law" in construing the terms of the statute. *Firestone Tire & Rubber Co.* v. *Bruch,* 489 U. S. 101, 111 (1989). Nevertheless, the majority today holds that in enacting ERISA Congress stripped ERISA trust beneficiaries of a remedy against trustees and third parties that they enjoyed in the equity courts under common law. Although it is assumed that a cause of action against a third party such as respondent is provided by ERISA, the remedies available are limited to the "tradi-tional" equitable remedies, such as injunction and restitu-tion, and do not include compensatory damages—"the classic form of *legal* relief." *Ante,* at 255 (emphasis in original).

Because I do not believe that the statutory language requires this result and because we have elsewhere recognized the anomaly of construing ERISA in a way that "would afford *less* protection to employees and their beneficiaries than they enjoyed before ERISA was enacted," *Firestone, supra,* at 114 (emphasis added), I must dissent.

## I

Concerned that many pension plans were being corruptly or ineptly mismanaged and that American workers were losing their financial security in retirement as a result, Congress in 1974 enacted ERISA, "declar[ing] [it] to be the policy of [the statute] to protect . . . the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect [to the plans], by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U. S. C. § 1001(b).

As we have noted previously, "ERISA's legislative history confirms that the Act's fiduciary responsibility provisions, 29 U. S. C. §§ 1101–1114, 'codif[y] and mak[e] applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts.'" *Firestone, supra,* at 110 (quoting H. R. Rep. No. 93–533, p. 11 (1973)). ERISA, we have explained, "abounds with the language and terminology of trust law" and must be construed against the background of the common law of trusts. *Firestone, supra,* at 110–111; see also *Central States, Southeast and Southwest Areas Pension Fund* v. *Central Transport, Inc.,* 472 U. S. 559, 570–571 (1985). Indeed, absent some express statutory departure— such as ERISA's broader definition of a responsible "fiduciary," see *ante,* at 262—Congress intended that the courts would look to the settled experience of the common law in giving shape to a " 'federal common law of rights and obligations under ERISA-regulated plans.'" *Firestone, supra,* at

110; see also H. R. Rep. No. 93–533, *supra*, at 11; S. Rep. No. 93–127, p. 29 (1973); 120 Cong. Rec. 29928, 29932 (1974) (statement of Sen. Williams).

Accordingly, it is to the common law of trusts that we must look in construing the scope of the "appropriate equitable relief" for breaches of trust contemplated by § 502(a)(3), 29 U. S. C. § 1132(a)(3).[1] As the majority notes, at common law

---

[1] As an initial matter, the majority expresses some uncertainty about whether § 502(a)(3) affords a cause of action and *any* sort of remedy against nonfiduciaries who participate in a fiduciary's breach of duty under the statute. See *ante*, at 253–254. In my view, however, the statute clearly does not bar such a suit. Section 502(a)(3) gives a cause of action to any participant, beneficiary, or fiduciary of an ERISA-governed plan "to redress . . . violations" of the statute. There can be no dispute that when an ERISA fiduciary breaches his or her duty of care in managing the plan, there has been a violation of the statute. See 29 U. S. C. § 1104. The only question then is whether the remedies provided by § 502(a)(3) "to redress such [a] violatio[n]" must stop with the breaching fiduciary or may extend to nonfiduciaries who actively assist in the fiduciary's breach. Section 502(a)(3) does not expressly provide for such a limitation and it does not seem appropriate to import one given that trust beneficiaries clearly had such a remedy at common law, see *ante*, at 256, 261, 262, and that ERISA is grounded in that common law and was intended, above all, to protect the interests of beneficiaries.

Moreover, the amendment of the statute in 1989, adding § 502(l), seems clearly to reflect Congress' understanding that ERISA provides such a remedy. As the majority notes, see *ante*, at 259, § 502(l) empowers the Secretary of Labor to assess a civil penalty against nonfiduciaries who "knowing[ly] participat[e]" in a fiduciary's breach of trust. 29 U. S. C. § 1132(*l*)(1)(B) (1988 ed., Supp. III). The subsection further provides that this penalty shall be "equal to 20 percent of the applicable recovery amount" obtained from the nonfiduciary in a proceeding under § 502(a)(5), which provides a cause of action to the Secretary that parallels that provided to beneficiaries under § 502(a)(3). §§ 1132(*l*)(1) and (2); see also *ante*, at 260. This provision clearly contemplates that some remedy may be had under § 502(a)(5)—and, by necessary implication, under § 502(a)(3)—against nonfiduciaries for "knowing participation" in a fiduciary's "breach of fiduciary responsibilit[ies]." § 1132(*l*)(1). Given that this understanding accords with well-established common-law trust principles undergirding ERISA and that it is also compatible with the language of § 502(a)(3), I see no basis for doubting the validity of petitioners' cause of action.

the courts of equity were the predominant forum for beneficiaries' claims arising from a breach of trust. These courts were not, however, the exclusive forum. In some instances, there was jurisdiction both in law and in equity and it was generally (although not universally) acknowledged that the beneficiary could elect between his or her legal and equitable remedies. See *Clews* v. *Jamieson*, 182 U. S. 461, 480–481 (1901); G. Bogert & G. Bogert, Law of Trusts and Trustees § 870, pp. 101–107 (2d rev. ed. 1982); 3 A. Scott & W. Fratcher, Law of Trusts § 198, pp. 194–203 (4th ed. 1988); J. Hill, Trustees *518–*519; Annot., Remedy at Law Available to Beneficiary of Trust as Exclusive of Remedy in Equity, 171 A. L. R. 429 (1947). Indeed, the Restatement of Trusts sets out in separate, successive sections the "legal" and "equitable" remedies available to beneficiaries under the common law of trusts. See Restatement (Second) of Trusts §§ 198, 199 (1959).

The traditional "equitable remedies" available to a trust beneficiary included compensatory damages. Equity "endeavor[ed] as far as possible to replace the parties in the same situation as they would have been in, if no breach of trust had been committed." Hill, *supra*, at *522; see also J. Tiffany & E. Bullard, Law of Trusts and Trustees 585–586 (1862) (defendant is chargeable with any losses caused to trust or with any profits trust might have earned absent the breach). This included, where necessary, the payment of a monetary award to make the victims of the breach whole. *Clews* v. *Jamieson*, *supra*, at 479–480; Hill, *supra*, at *522; Bogert & Bogert, *supra*, § 862; see also *United States* v. *Mitchell*, 463 U. S. 206, 226 (1983); *Massachusetts Mut. Life Ins. Co.* v. *Russell*, 473 U. S. 134, 154, n. 10 (1985) (Brennan, J., concurring in judgment).

Given this history, it is entirely reasonable in my view to construe § 502(a)(3)'s reference to "appropriate equitable relief" to encompass what was equity's routine remedy for such breaches—a compensatory monetary award calculated to make the victims whole, a remedy that was available against

both fiduciaries and participating nonfiduciaries. Construing the statute in this manner also avoids the anomaly of interpreting ERISA so as to leave those Congress set out to protect—the participants in ERISA-governed plans and their beneficiaries—with "less protection . . . than they enjoyed before ERISA was enacted." *Firestone*, 489 U. S., at 114.[2] Indeed, this is precisely how four Justices of this Court read § 502(a)(3)'s reference to "appropriate equitable relief" in *Russell*. See 473 U. S., at 154, and n. 10 (Brennan, J., joined by WHITE, Marshall, and BLACKMUN, JJ., concurring in judgment).

## II

The majority, however, struggles to find on the face of the statute evidence that § 502(a)(3) is to be more narrowly construed. First, it observes that ERISA elsewhere uses the terms "remedial relief" and "legal relief" and reasons that Congress must therefore have intended to differentiate between these concepts and "equitable relief." Second, it is noted that the crucial language of § 502(a)(3) describes the available relief as *equitable* relief. It is then asserted that "[s]ince *all* relief available for breach of trust could be obtained from a court of equity, limiting the sort of relief obtainable under § 502(a)(3) to 'equitable relief' in the sense of 'whatever relief a common-law court of equity could provide in such a case' would limit the relief *not at all*," rendering Congress' imposition of the modifier "equitable" a nullity. *Ante*, at 257 (emphasis in original). Searching for some way

---

[2] Section 514(a) of ERISA pre-empts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. 29 U. S. C. § 1144(a). Although the majority stops short of deciding the pre-emption implications of its holding, see *ante*, at 261, it is difficult to imagine how any common-law remedy for the harm alleged here—participation in a breach of fiduciary duty concerning an ERISA-governed plan—could have survived enactment of ERISA's "'deliberately expansive'" pre-emption provision, *Ingersoll-Rand Co.* v. *McClendon*, 498 U. S. 133, 138 (1990) (citation omitted).

in which to give "appropriate equitable relief" a limiting effect, the majority feels compelled to read the phrase as encompassing only "those categories of relief that were *typically* available" in the broad run of equity cases, without regard to the particular equitable remedies available in trust cases. See *ante*, at 256 (emphasis in original). This would include injunction and restitution, for example, but not money damages. See *ibid.* As I see it, however, the words "appropriate equitable relief" are no more than descriptive and simply refer to all remedies available in equity under the common law of trusts, whether or not they were or are the exclusive remedies for breach of trust.

I disagree with the majority's inference that by using the term "legal . . . relief" elsewhere in ERISA, Congress demonstrated a considered judgment to constrict the relief available under § 502(a)(3). To be sure, § 502(g)(2)(E) of the statute empowers courts to award appropriate "legal or equitable relief" where a fiduciary successfully sues an employer for failing to make required contributions to a "multiemployer plan." § 1132(g)(2)(E). Likewise, § 104(a)(5)(C) authorizes the Secretary of Labor to bring "a civil action for such legal or equitable relief as may be appropriate" to force the administrator of an employee benefit plan to file certain plan documents with the Secretary. 29 U. S. C. § 1024(a)(5)(C). And, finally, §§ 4003(e)(1) and 4301(a)(1) of the statute, also cited by the majority, empower courts to dispense "appropriate relief, legal or equitable or both," in actions brought by the Pension Benefit Guaranty Corporation (PBGC) or by plan fiduciaries, participants, or beneficiaries with respect to the peculiar statutory duties relating to the PBGC. 29 U. S. C. § 1303(e)(1); see also § 1451(a)(1) (authorizing "an action for appropriate legal or equitable relief, or both"). Significantly, however, none of the causes of action described in these sections—relating to the financing of "multiemployer plans," administrative filing requirements, and the PBGC—had any discernible analogue in the common

law of trusts.. Accordingly, there being no common-law tradition either in law or in equity to which Congress might direct the courts, it is not at all surprising that Congress would refer to both legal and equitable relief in making clear that the courts are free to craft whatever relief is most appropriate.[3] It seems to me a treacherous leap to draw from these sections a congressional intention to foreclose compensatory monetary awards under §502(a)(3) notwithstanding that such awards had always been considered "appropriate equitable relief" for breach of trust at common law. See *supra*, at 266–267.[4]

---

[3] The majority claims to find a common-law analogue for an action under §104(a)(5)(C), likening an action by the Secretary of Labor to enforce ERISA's administrative filing requirements to a common-law action against a trustee for failure to keep and render accounts. *Ante*, at 259, n. 9. The analogy seems to me a long reach. The common-law duty of trustees to account to beneficiaries for all transactions made on behalf of the trust bears, at best, only slight resemblance to the ERISA-created duty of plan administrators to file with the Secretary of Labor specified annual reports, plan descriptions, and summary plan descriptions. See 29 U. S. C. §1024(a)(1). So, too, the fact that some States—by *statute*—have required trustees to render an accounting to state courts, see 2A A. Scott & W. Fratcher, Law of Trusts §172, p. 456 (4th ed. 1988), cited *ante*, at 259, n. 9, fails to establish a *common-law* analogue for actions by the Secretary under §104(a)(5)(C).

[4] Moreover, if the text of the statute reflects Congress' careful differentiation between "legal" and "equitable" relief, as the majority posits, it presumably must also reflect a careful differentiation between "equitable" and "remedial" relief and, for that matter, between "legal" and "remedial" relief. See 29 U. S. C. §1109(a) (breaching fiduciary "shall be subject to such other equitable or remedial relief as the court may deem appropriate"). What limiting principle Congress could have intended to convey by this latter term I cannot readily imagine. "Remedial," after all, simply means "intended as a remedy," Webster's Ninth New Collegiate Dictionary 996 (1983), and "relief" is commonly understood to be a synonym for "remedy," *id.*, at 995. At the very least, Congress' apparent imprecision in this regard undermines my confidence in the strong inferences drawn by the majority from Congress' varying phraseology concerning relief under ERISA.

Even accepting, however, that "equitable" relief is to be distinguished from "legal" relief under the statute, the majority is wrong in supposing that the former concept swallows the latter if § 502(a)(3)'s reference to "appropriate equitable relief" is understood to encompass those remedies that were traditionally available in the equity courts for breach of trust. The fact of the matter is that not all forms of relief were available in the common-law courts of equity for a breach of trust. Although the equity courts could award monetary relief to make the victim of a breach of trust whole, extracompensatory forms of relief, such as punitive damages, were not available. As this Court has long recognized, courts of equity would not—absent some express statutory authorization—enforce penalties or award punitive damages. See *Tull* v. *United States*, 481 U. S. 412, 422, and n. 7 (1987); *Stevens* v. *Gladding*, 17 How. 447, 454–455 (1855); *Livingston* v. *Woodworth*, 15 How. 546, 559–560 (1854); see also 2 J. Sutherland, Law of Damages § 392, p. 1089 (3d ed. 1903); W. Hale, Law of Damages 319 (2d ed. 1912); 1 T. Sedgwick, Measure of Damages § 371, p. 531 (8th ed. 1891). As JUSTICE KENNEDY has observed, this limitation on equitable relief applied in the trust context as well, where plaintiffs could recover compensatory monetary relief for a breach of trust, but not punitive or exemplary damages. See *Teamsters* v. *Terry*, 494 U. S. 558, 587 (1990) (dissenting opinion).[5]

---

[5] JUSTICE KENNEDY's observation is well grounded in legal history. In crafting a remedy for a breach of trust the exclusive aim of the common-law equity courts was to make the victim whole, "endeavor[ing] as far as possible to replace the parties in the same situation as they would have been in, if no breach of trust had been committed." J. Hill, Trustees *522; see also Restatement (Second) of Trusts § 205 (1959). Historically, punitive damages were unavailable in any equitable action on the theory that "the Court of Chancery as the Equity Court is a court of conscience and will permit only what is just and right with no element of vengeance." *Beals* v. *Washington International, Inc.*, 386 A. 2d 1156, 1159 (Del. Ch. 1978); accord, *Williamson* v. *Chicago Mill & Lumber Corp.*, 59 F. 2d 918, 922 (CA8 1932); *Stolz* v. *Franklin*, 258 Ark. 999, 1008, 531 S. W. 2d 1, 7

By contrast, punitive damages were among the "legal remedies" available in common-law trust cases. In those trust cases that historically could have been brought as actions at law—such as where a trustee is under an immediate and unconditional duty to pay over funds to a beneficiary, see *ante*, at 256, n. 6—it has been acknowledged that the beneficiary may recover punitive as well as compensatory damages. See *Fleishman v. Krause, Lindsay & Nahstoll*, 261 Ore. 505, 495 P. 2d 268 (1972) (reversing and remanding for jury trial beneficiary's claim for punitive and compensatory damages); *Dixon v. Northwestern Nat. Bank of Minneapolis*, 297 F. Supp. 485 (Minn. 1969) (same). Moreover, while the majority of courts adhere to the view that equity courts, even in trust cases, cannot award punitive damages, see Note, Participant and Beneficiary Remedies Under ERISA: Extracontractual and Punitive Damages After *Massachusetts Mutual Life Insurance Co. v. Russell*, 71 Cornell L.

---

(1975); *Superior Constr. Co. v. Elmo*, 204 Md. 1, 16, 104 A. 2d 581, 583 (1954); *Given v. United Fuel Gas Co.*, 84 W. Va. 301, 306, 99 S. E. 476, 478 (1919); *Orkin Exterminating Co. of South Florida v. Truly Nolen, Inc.*, 117 So. 2d 419, 422–423 (Fla. App. 1960); D. Dobbs, Remedies § 3.9, pp. 211–212 (1973). Thus, even "where, in equitable actions, it becomes necessary to award damages, only compensatory damages should be allowed." *Karns v. Allen*, 135 Wis. 48, 58, 115 N. W. 357, 361 (1908); see also *Coca-Cola Co. v. Dixi-Cola Laboratories*, 155 F. 2d 59, 63 (CA4), cert. denied, 329 U. S. 773 (1946); *United States v. Bernard*, 202 F. 728, 732 (CA9 1913); 1 T. Sedgwick, Measure of Damages § 371, p. 531 (8th ed. 1891).

The majority denigrates this traditional rule by citing to Professor Dobbs' 1973 treatise on remedies. That treatise noted a "modern" trend among some courts (on the eve of ERISA's enactment) to allow punitive damages in equity cases, but it also noted that the majority rule remained otherwise. Moreover, the trend Professor Dobbs identified was driven in large part by the "modern" merger of law and equity and by the consequent belief that there is no longer any reason to disallow "legal" remedies in what traditionally were "equitable" actions. See *ante*, at 258, n. 8. Accordingly, the majority's observation in no way undermines the validity of the traditional rule—well ensconsed at the time of ERISA's enactment—that punitive damages were not an appropriate *equitable* remedy, even in trust cases.

Rev. 1014, 1029–1030 (1986); see also D. Dobbs, Remedies § 3.9, pp. 211–212 (1973), a number of courts in more recent decades have drawn upon their "legal" powers to award punitive damages even in cases that historically could have been brought only in equity. While acknowledging the traditional bar against such relief in equity, these courts have concluded that the merger of law and equity authorizes modern courts to draw upon both legal and equitable powers in crafting an appropriate remedy for a breach of trust. See *I. H. P. Corp.* v. *210 Central Park South Corp.*, 16 App. Div. 2d 461, 464–466, 228 N. Y. S. 2d 883, 887–888 (1962), aff'd, 12 N. Y. 2d 329, 189 N. E. 2d 812 (1963); *Gould* v. *Starr*, 558 S. W. 2d 755, 771 (Mo. App. 1977), cert. denied, 436 U. S. 905 (1978); *Citizens & Southern Nat. Bank* v. *Haskins*, 254 Ga. 131, 136–137, 327 S. E. 2d 192, 199 (1985); see also *New Jersey Division, Horsemen's Benevolent Protective Assn.* v. *New Jersey Racing Comm'n*, 251 N. J. Super. 589, 605, 598 A. 2d 1243, 1251 (1991) (present-day Chancery Division can "afford the full range of equitable and legal remedies for breach of trust," including punitive damages); cf. *Charles* v. *Epperson & Co.*, 137 N. W. 2d 605, 618 (Iowa 1965).

Because some forms of "legal" relief in trust cases were thus not available at equity, limiting the scope of relief under § 502(a)(3) to the sort of relief historically provided by the equity courts for a breach of trust provides a meaningful limitation and, if one is needed, a basis for distinguishing "equitable" from "legal" relief.[6] Accordingly, the statutory

---

[6] Not surprisingly, in light of this history, "the Courts of Appeals which have passed on [the question] have concluded that the statutory language and legislative history of section 502(a)(3) of ERISA prohibit recovery of punitive damages." *Varhola* v. *Doe*, 820 F. 2d 809, 817 (CA6 1987); see also *Harsch* v. *Eisenberg*, 956 F. 2d 651, 661 (CA7), cert. denied *sub nom. Bihler* v. *Eisenberg*, 506 U. S. 818 (1992); *Drinkwater* v. *Metropolitan Life Ins. Co.*, 846 F. 2d 821, 825 (CA1), cert. denied, 488 U. S. 909 (1988); *Amos* v. *Blue Cross-Blue Shield of Alabama*, 868 F. 2d 430, 431, n. 2 (CA11), cert. denied, 493 U. S. 855 (1989); *Sommers Drug Stores Co. Employees Profit Sharing Trust* v. *Corrigan Enterprises, Inc.*, 793 F. 2d 1456, 1464–

text does not compel the majority's rejection of the reading of "appropriate equitable relief" advanced by petitioners and the Solicitor General—a reading that the majority acknowledges is otherwise plausible, see *ante*, at 256.[7]

## III

Although the trust beneficiary historically had an equitable suit for damages against a fiduciary for breach of trust, as well as against a participating nonfiduciary, the majority today construes § 502(a)(3) as not affording such a remedy against any fiduciary or participating third party on the ground that damages are not "appropriate equitable relief." The majority's conclusion, as I see it, rests on transparently

1465 (CA5 1986), cert. denied, 479 U. S. 1034 (1987); *Powell* v. *Chesapeake & Potomac Telephone Co. of Virginia,* 780 F. 2d 419, 424 (CA4 1985), cert. denied, 476 U. S. 1170 (1986). With respect to § 502(a)(2), however, under which a beneficiary may claim both "equitable" and "remedial" relief, see 29 U. S. C. § 1132(a)(2) (allowing "for appropriate relief under section 1109 of this title"), the courts are split over whether punitive damages may be recovered. Compare *Kuntz* v. *Reese,* 760 F. 2d 926, 938 (CA9 1985) (allowing such a recovery), vacated on other grounds, 785 F. 2d 1410, cert. denied, 479 U. S. 916 (1986), with *Sommers Drug Stores, supra,* at 1463 (disallowing such a recovery); see also *Cox* v. *Eichler,* 765 F. Supp. 601, 610–611 (ND Cal. 1990) (punitive damages available under § 502(a)(2) but not under § 502(a)(3)). This Court in *Russell* expressly reserved judgment on whether punitive damages might be recovered on behalf of an ERISA-governed plan under § 502(a)(2). *Massachusetts Mut. Life Ins. Co.* v. *Russell,* 473 U. S. 134, 144, n. 12 (1985).

[7] The majority faults "[t]he notion that concern about punitive damages motivated Congress" in drafting ERISA on the grounds that the availability of punitive damages was not "a major issue" in 1974. *Ante,* at 257, n. 7. Neither, of course, is there anything to suggest that the availability of *compensatory* damages was a "major issue" in 1974, although the majority does not hesitate to attribute this concern to the 93d Congress. In any event, it seems to me considerably less fanciful to suppose that Congress was motivated by a desire to limit the availability of punitive damages than that it was moved by a desire to take from the statute's intended beneficiaries their traditional and possibly their only means of make-whole relief.

insufficient grounds. The text of the statute supports a reading of § 502(a)(3) that would permit a court to award compensatory monetary relief where necessary to make an ERISA beneficiary whole for a breach of trust. Such a reading would accord with the established equitable remedies available under the common law of trusts, to which Congress has directed us in construing ERISA, and with Congress' primary goal in enacting the statute, the protection of beneficiaries' financial security against corrupt or inept plan mismanagement. Finally, such a reading would avoid the perverse and, in this case, entirely needless result of construing ERISA so as to *deprive* beneficiaries of remedies they enjoyed prior to the statute's enactment. For these reasons, I respectfully dissent.