Justice Scalia,
with whom Justice Thomas joins, concurring in the judgment.
I agree with the Court that § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U. S. C. § 1132(a)(1)(B), does not authorize relief for misrepresentations in a summary plan description (SPD). I do not join the Court’s opinion because I see no need and no justification for saying anything more than that.
Section 502(a)(1)(B) of ERISA states that a plan participant or beneficiary may bring a civil action “to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to *446 future benefits under the terms of the plan.” ERISA defines the word “plan” as “an employee welfare benefit plan or an employee pension benefit plan or a plan which is both,” 29 U. S. C. § 1002(3), and it requires that a “plan” “be established and maintained pursuant to a written instrument,” § 1102(a)(1). An SPD, in contrast, is a disclosure meant “to reasonably apprise [plan] participants and beneficiaries of their rights and obligations under the plan.” § 1022(a). It would be peculiar for a document meant to “apprise” participants of their rights “under the plan” to be itself part of the “plan.” Any doubt that it is not is eliminated by ERISA’s repeated differentiation of SPDs from the “written instruments” that constitute a plan, see, e. g., §§ 1029(c), 1024(b)(2), and ERISA’s assignment to different entities of responsibility for drafting and amending SPDs on the one hand and plans on the other, see §§1002(1), (2)(A); 1021(a) (2006 ed. and Supp. Ill), 1024(b)(1) (2006 ed.); Beck v. PACE Int’l Union, 551 U. S. 96,101 (2007). An SPD, moreover, would not fulfill its purpose of providing an easily accessible summary of the plan if it were an authoritative part of the plan itself; the minor omissions appropriate for a summary would risk revising the plan.
Nothing else needs to be said to dispose of this case. The District Court based the relief it awarded upon ERISA § 502(a)(1)(B), and that provision alone. It thought that the “benefits” due “under the terms of the plan,” 29 U. S. C. § 1132(a)(1)(B), could derive from an SPD, either because the SPD is part of the plan or because it is capable of somehow modifying the plan. Under either justification, that conclusion is wrong. An SPD is separate from a plan, and cannot amend a plan unless the plan so provides. See Curtiss-Wright Corp. v. Schoonejongen, 514 U. S. 73, 79, 85 (1995). I would go no further.
The Court, however, ventures on to address a different question: whether respondents may recover under § 502(a)(3) of ERISA, which allows plan participants “to obtain other *447 appropriate equitable relief.” 29 U. S. C. § 1132(a)(3). The District Court expressly declined to answer this question, stating that it “need not consider whether any relief ordered under § 502(a)(1)(B) would also be available under § 502(a)(3).” 559 F. Supp. 2d 192, 205 (Conn. 2008). It did note that § 502(a)(3) might not help respondents because that provision authorizes only relief that was “‘typically available in equity.’” Ibid, (quoting Great-West Life & Annuity Ins. Co. v. Knudson, 534 U. S. 204, 210 (2002); some internal quotation marks omitted). But it described this question as “particularly complicated,” 559 F. Supp. 2d, at 205, and said that “in view of these knotty issues . . . the Court need not, and does not, decide whether Plaintiffs could obtain relief under § 502(a)(3),” id., at 206.
It is assuredly not our normal practice to decide issues that a lower court “need not, and does not, decide,” see Cooper Industries, Inc. v. Aviall Services, Inc., 543 U. S. 157, 168-169 (2004), and this case presents no exceptional reason to do so. To the contrary, it presents additional reasons not to do so. Mertens v. Hewitt Associates, 508 U. S. 248 (1993), the case the District Court feared had “severely curtailed the kinds of relief . . . available under § 502(a)(3),” 559 F. Supp. 2d, at 205, is cited exactly one time in the parties’ briefs — by the CIGNA petitioners for the utterly unrelated proposition that ERISA contains a “‘carefully crafted and detailed enforcement scheme.’ ” Brief for Petitioners 2. And there is no discussion whatsoever of contract reformation or surcharge in the briefs of the parties or even amici.[1]
The opinion for the Court states that the District Court “strongly implied . . . that it would base its relief upon [§ 502(a)(3)] were it not for (1) the fact that... § 502(a)(1)(B) . . . provided sufficient authority; and (2) certain cases from *448 this Court that narrowed the application of the term ‘appropriate equitable relief.' ” Ante, at 438. I find no such implication whatever — not even a weak one. The District Court simply said that § 502(a)(1)(B) provided relief, and that under our cases § 502(a)(3) might not do so. While some Members of this Court have sought to divine what legislators would have prescribed beyond what they did prescribe, none to my knowledge has hitherto sought to guess what district judges would have decided beyond what they did decide. And this, bear in mind, is not just a guess as to what the District Court would have done if it had known that its § 502(a)(1)(B) relief was (as we today hold) improper. The apparent answer to that is that it would have denied relief, since it thought itself constrained by “certain cases from this Court that [have] narrowed [§ 502(a)(3)],” ante, at 438. No, the course the Court guesses about is what the District Court would have done if it had known both that § 502(a)(1)(B) denies relief and that § 502(a)(3) provides it. This speculation upon speculation hardly renders our discussion of § 502(a)(3) relevant to the decision below; it is utterly irrelevant.
Why the Court embarks on this peculiar path is beyond me. It cannot even be explained by an eagerness to demonstrate — by blatant dictum, if necessary — that, by George, plan members misled by an SPD will be compensated. That they will normally be compensated is not in doubt. As the opinion for the Court notes, ante, at 432-433, the Second Circuit has interpreted ERISA as permitting the invalidation of plan amendments not preceded by proper notice, by reason of § 204(h), which reads:
“An applicable pension plan may not be amended so as to provide for a significant reduction in the rate of future benefit accrual unless the plan administrator provides the notice described in paragraph (2) to each applicable individual____” 29 U. S. C. § 1054(h)(1) (2006 ed., Supp. IV).
*449 This provision appears a natural fit to respondents’ claim, which is not that CIGNA was prohibited from changing its plan, but that CIGNA “failed to give them proper notice of changes to their benefits. ” Ante, at 424. It was inapplicable here only because of the peculiar facts of this case and the manner in which respondents chose to argue the case.[2]
Rather than attempting to read the District Judge’s palm, I would simply remand. If the District Court dismisses the case based on an incorrect reading of Mertens, the Second Circuit can correct its error, and if the Second Circuit does not do so this Court can grant certiorari. The Court’s discussion of the relief available under § 502(a)(3) and Mertens is purely dicta, binding upon neither us nor the District Court. The District Court need not read any of it — and, indeed, if it takes our suggestions to heart, we may very well reverse. Even if we adhere to our dicta that contract reformation, estoppel, and surcharge are “ ‘distinctively equitable’ remedies,” ante, at 440, it is far from clear that they are available remedies in this ease. The opinion for the Court does not say (much less hold) that they are and disclaims the implication, see ante, at 442-443.
Contraet'reformation is a standard remedy for altering the terms of a writing that fails to express the agreement of the parties “owing to the fraud of one of the parties and mistake of the other.” 27 R. Lord, Williston on Contracts §69:55, p. 160 (4th ed. 2003). But here, the Court would be employing that doctrine to alter the terms of a contract in response to a third party’s misrepresentations — not those of a party *450 to the contract. The SPD is not part of the ERISA plan, and it was not written by the plan’s sponsor. Although in this case CIGNA wrote both the plan and the SPD, it did so in different capacities: as sponsor when writing the plan, and as administrator when preparing the SPD. ERISA “carefully distinguishes these roles,” ante, at 437; see also Beck, 551 U. S., at 101, and nothing the Court cites suggests that they blend together when performed by the same entity.
Admittedly, reformation might be available if the third party was an agent of a contracting party and its misrepresentations could thus be attributed to it under agency law. But such a relationship has not been alleged and is unlikely here. An ERISA administrator’s duty to provide employees with an SPD arises by statute, 29 U. S. C. § 1024(b)(1) (2006 ed.), and not by reason of its relationship to the sponsor. The administrator is a legally distinct entity. Moreover, it is incoherent to think of the administrator as agent and the sponsor as principal. Were this the case, and were the administrator contracting with employees as an agent of the sponsor in producing the SPD, then the SPD would be part of the plan or would amend it — exactly what the opinion for the Court rejects in Part II-A, ante. And, in any event, SPDs may be furnished months after an employee accepts a pension or benefit plan. § 1024(b)(1). Reformation is meant to effectuate mutual intent at the time of contracting, and that intent is not retroactively revised by subsequent misstatements.
Equitable estoppel and surcharge are perhaps better suited to the facts of this case. CIGNA admits that respondents might be able to recover under § 502(a)(3) pursuant to an equitable estoppel theory, but it presumably makes this concession only because questions of reliance would be individualized and potentially inappropriate for class-action treatment. Surcharge (which CIGNA does not concede and which is not briefed) may encounter the same problem. The amount for which an administrator may be surcharged is, as *451 the opinion for the Court notes, the “actual harm” suffered by an employee, ante, at 444 — that is, harm stemming from reliance on the SPD or the lost opportunity to contest or react to the switch. Cf. 3 A. Scott & W. Fratcher, Law of Trusts § 205, pp. 237-243 (4th ed. 1988). A remedy relating only to that harm would of course be far different from what the District Court imposed.[3]
* * *
I agree with the Court that an SPD is not part of an ERISA plan, and that, as a result, a plan participant or beneficiary may not recover for misrepresentations in an SPD under § 502(a)(1)(B). Because this is the only question properly presented for our review, and the only question briefed and argued before us, I concur only in the judgment.

 “[PJlan reformation” makes an appearance in one sentence of one footnote of the Government’s brief, see Brief for United States as Amicus Curiae 30, n. 9. This cameo hardly qualifies as “discussion.”

 It is also not obvious that the relief sought in this ease would constitute an equitable surcharge allowable under Mertens v. Hewitt Associates, 508 U. S. 248 (1993). Cf. Knieriem v. Group Health Plan, Inc., 434 F. 3d 1058, 1063-1064 (CA8 2006). This question, however, like the Court’s entire discussion of § 502(a)(3), is best left for a case in which the issue is raised and briefed.