James A. MEHLING, et al.

v.

**NEW YORK LIFE INSURANCE COMPANY, et al.**

No. 99–CV–5417.

United States District Court,
E.D. Pennsylvania.

March 29, 2001.

**504**

Clyde W. Waite, Stief, Waite, Gross, Sagoskin & Gilman, Newtown, PA, Michael D. Lieder, Jennifer C. Jaff, Sprenger & Lang, Washington, DC, Lawrence P. Schaefer, Minneapolis, MN, Alan M. Sandals, Sandals & Langer, LLP, Philadelphia, PA, Eli Gottesdiener, Gottesdiener Law Office, Washington, DC, for Plaintiffs.

Roxane N. Sokolove, Akin, Gump, Strauss, Hauer & Feld, Wasington, DC, Joseph J. Costello, Michael L. Banks, Ellen T. Noteware, Morgan, Lewis & Bockius, LLP, Philadelphia, PA, Robert Gallagher, Stephen M. Saxon, Andre M. St. Martin, Groom Law Group, Washingon, DC, for Defendants.

### MEMORANDUM AND ORDER

KAUFFMAN, District Judge.

Plaintiffs in this action are current and former employees and agents of New York Life Insurance Company and its affiliates ("New York Life" or "the Company") who participate or previously participated in the Company's employee benefit plans ("the Plans"). Suing on behalf of themselves, a class of Plan participants, and the Plans themselves, Plaintiffs are seeking monetary damages and injunctive relief against Defendants New York Life and New York Life's Trustees and Plan Administrator for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The Plans are also named as Plaintiffs in their own right for purposes of the Complaint's four RICO claims. Plaintiff James A. Mehling asserts individual claims under ERISA, as well as under the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S. § 34: 19–1 *et seq.*

Plaintiffs filed their initial Complaint on November 1, 1999, their First Amended Complaint on April 14, 2000, and their Second Amended Complaint on July 25, 2000. Now before the Court is Defendants' Motion for Partial Dismissal of the Second Amended Complaint, To Compel Arbitration of Certain Claims, and To Strike Any Remaining Claims or Allega-

tions. For the reasons set forth below, Defendants' Motion will be granted in part and denied in part.

### ALLEGED FACTS

New York Life is a mutual life insurance company. (Compl.¶ 42.) Through its subsidiaries, the Company markets a variety of life insurance policies, mutual funds, annuity contracts, financial contracts, retirement contracts, and other money management services to its institutional clients and the general public. (Compl.¶ 42.) It also offers its employees and agents the opportunity to participate in a number of employee benefit plans, including Pension and 401(k) Plans. (Compl.¶¶ 27, 35.) New York Life is the sponsor of the Plans and thereby has the sole power of appointing and removing the named fiduciaries of the Plans. (Compl.¶¶ 31, 36.) It selected its Trustees and Administrator to be the named fiduciaries and to control and manage the operation and administration of the Plans. (Compl.¶¶ 33, 36.)

Participants in the Company's Pension Plans receive fixed pension benefits based on a formula that takes into account the number of years that a participant worked for New York Life, his or her final average salary or earnings, and the age when he or she starts to receive benefits. (Compl.¶ 27.) Although New York Life is responsible for the Plans' funding, it is the Trustees and Administrator who oversee the Plans' investments and who control the management of the Plans' assets. (Compl.¶¶ 30, 34.)

Under the 401(k) Plans, New York Life credits each participant with an individual account funded through a combination of Company contributions and voluntary participant contributions that are deducted from the individual's salary or commission. (Compl.¶ 35.) The Plans' fiduciaries have exclusive control of the investment options offered to the 401(k) participants, but the participants themselves are responsible for directing the ways in which the money in their individual accounts is to be invested. (Compl.¶¶ 37, 39.)

In the fall of 1990, New York Life created a family of institutional mutual funds incorporated as the New York Life Institutional Funds, Inc., and later re-named the MainStay Institutional Funds, Inc. ("the MainStay Funds"). (Compl.¶ 3.) Over $400 million of the assets contained in New York Life's Pension and 401(k) Plans were transferred to the MainStay Funds throughout the past decade, purportedly in an attempt to "seed, sustain, and grow" the Company's new line of institutional mutual funds. (Compl.¶¶ 80–97.)

James Mehling, a ten-year employee of New York Life, learned about Defendants' investment of Plan assets in the MainStay Funds and began voicing his concern to colleagues that Defendants were deriving a financial benefit from the in-house investment scheme. (Compl.¶¶ 9, 129.) Mehling was subsequently fired in 1999 for what New York Life claimed was insubordination for sending an employee-wide e-mail that criticized the Company. (Compl.¶ 10.) Because New York Life reasoned that his termination was for "good cause," Mehling was denied the early retirement and severance benefits to which he otherwise would have been entitled under the Company's Plans. (Compl.¶¶ 142, 157.)

Plaintiffs commenced this action on November 1, 1999, alleging that Defendants' in-house investment scheme was a breach of their fiduciary duty under ERISA and that it constituted a criminal racketeering activity under RICO. In support of these allegations, Plaintiffs claim that Defendants engaged in a scheme to defraud the Company's employees and agents and their Plans by using the Plan assets for their own corporate and personal gain, and

not for the sole benefit of the Plan participants. (Compl.¶¶ 53, 79.) Plaintiff Mehling also brings individual claims under ERISA and CEPA on the ground that he was wrongly discharged because Defendants feared he might "blow the whistle" on their fraudulent self-dealing investment scheme. (Compl.¶ 217.)

### DISCUSSION

### I. DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT

When deciding Defendants' Motion for Partial Dismissal of the Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6), the Court must "take the well-pleaded factual allegations in the complaint as true," construe those facts in the light most favorable to Plaintiffs, and "ascertain whether they state a claim on which relief could be granted." *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). The Court may dismiss the Complaint only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

Defendants move to dismiss Plaintiffs' RICO and ERISA claims either in their entirety (Counts I–IV, VI–VII) or in part (Counts V, VIII).

### A. RICO CLAIMS

Plaintiffs allege that Defendants violated RICO by committing a number of predicate acts in furtherance of their fraudulent self-dealing investment scheme, including criminal breach of fiduciary duty, criminal conversion of Plan assets, and mail and wire fraud. (Compl.¶¶ 53, 82, 106.) There are two categories of Plaintiffs bringing the RICO claims: (1) the Plan participants ("the Individual RICO Plaintiffs"), and (2) the Plans themselves. The RICO claims fail for both categories, however, because: (1) the Individual RICO Plaintiffs lack standing, and (2) Plaintiffs do not adequately allege a cognizable claim under RICO.

#### 1. *The Individual RICO Plaintiffs*

To establish standing, a RICO plaintiff must show: "(1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the alleged RICO violation." *Maio v. Aetna, Inc.,* 221 F.3d 472, 483 (3d Cir.2000); *see also* 18 U.S.C. § 1964 (requiring a RICO plaintiff to show that he or she has been "injured in his business or property by reason of a [RICO] violation"). "[A] showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest." *Id.* (quoting *Steele v. Hospital Corp. of Am.,* 36 F.3d 69, 70 (9th Cir.1994)).

The Third Circuit recently enunciated the principles of RICO standing in *Maio, supra.* The plaintiffs in *Maio* claimed they suffered a direct, financial injury because they had paid more for their HMO plans than the plans were worth and the care they had received was inferior to the care they were promised. *Maio,* 221 F.3d at 480. The Third Circuit held that the plaintiffs lacked standing because they failed to establish that they "suffered a tangible economic harm compensable under RICO." *Id.* at 488. The court further concluded that the plaintiffs could demonstrate a RICO injury only if they could show that the HMO failed to perform the parties' contractual agreement:

Because [plaintiffs'] property interests in their memberships in [the] HMO plan take the form of contractual rights to receive a certain level (quantity and quality) of benefits from [the HMO] through its participating providers, it inexorably follows that [plaintiffs] cannot establish a RICO injury to those property rights ... absent proof that [the HMO] failed to perform under the parties' contractual arrangement.

*Id.* at 490 (citations omitted). Because the plaintiffs did not allege that the defendants failed to perform under the parties' contractual agreement, the Third Circuit affirmed the district court's decision to dismiss the plaintiffs' RICO claims. *Id.* at 488.

■ Thus, for the Individual RICO Plaintiffs in this case to establish RICO standing under *Maio,* they must show that Defendants failed to perform their contractual obligations. The Plaintiffs fail to make this showing, however, as there is no allegation that they did not receive the benefits to which they were entitled under their pension and 401(k) Plans. Instead, the only injury alleged in their Complaint was that the Individual RICO Plaintiffs were denied:

> the knowledge and opportunity to take steps to protect their interests in any number of ways, including seeking the assistance of the Department of Labor to stop the fraudulent scheme, pursuing employment with an employer that was not engaged in fraud and self-dealing, ceasing their contributions into the 401(k) Plans, and using those funds to pursue alternative means of funding their retirements.

(Compl. ¶ 161.) These allegations, even when read in the light most favorable to Plaintiffs, do not establish a financial injury sufficient to confer RICO standing under *Maio.* Accordingly, the Court will dis-

miss the RICO claims (Counts I–IV) as they pertain to the Individual RICO Plaintiffs.

**2. *The Plans as RICO Plaintiffs***

■ Unlike the Individual RICO Plaintiffs, the Plans have alleged an injury sufficient to confer RICO standing. The Plans' RICO claims are also unable to survive Defendants' 12(b)(6) Motion, however, because Plaintiffs fail to sufficiently plead a predicate act of racketeering required under RICO.

■ To state a RICO claim, a plaintiff must allege that a defendant engaged in a "pattern of racketeering activity." *See* 18 U.S.C. § 1964(c); *see also Marshall–Silver Constr. Co., Inc. v. Mendel,* 835 F.2d 63, 65 (3d Cir.1987) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). Racketeering activity, for RICO purposes, is any act which is "indictable" under the federal criminal statutes set forth in 18 U.S.C. § 1961(*l*). Consequently, only a violation of a listed statute constitutes a predicate act of racketeering under RICO.

Plaintiffs allege that Defendants violated three of the criminal statutes that are set forth as predicate acts: 18 U.S.C. § 1954 (payment of "kickbacks" to a person affiliated with an employee benefit plan); 18 U.S.C. § 664 (embezzlement from a plan); and 18 U.S.C. §§ 1341, 1343 (mail and wire fraud).

**a. Section 1954**

■ To state a Section 1954 violation, a plaintiff must allege that a plan's fiduciary or agent "solicited or received certain benefits with intent to be influenced in his dealings with the employee benefit plan." *United States v. Palmeri,* 630 F.2d 192, 199 n. 3 (3d Cir.1980). A defendant's receipt of "bona fide salary, compensation, or other payments made for goods or facili-

ties actually furnished or for services actually performed in the regular course of his duties" does not constitute an unlawful kickback. 18 U.S.C. § 1954.

■ Plaintiffs claim that New York Life violated Section 1954 by charging "excessive fees" for the transfer of Plan assets to the MainStay Funds. (*See* Compl. ¶¶ 169(a), 178(a), 186(a), 197(a).) These mutual fund expenses, however, were paid at the same rate by *all* shareholders in the MainStay Funds, not just the Plans, and were disclosed to the shareholders and to the SEC. Consequently, the fees received by New York Life were compensation for services rendered and thereby fall within the "bona fide compensation" exception to Section 1954.

■ Plaintiffs also claim that the Trustees and Plan Administrator violated Section 1954 because, as corporate executives, they earned bonuses that were based, in part, on the success of New York Life affiliates such as the MainStay Funds. (*See* Compl. ¶¶ 46–49.) The law permits the Trustees and Plan Administrator to serve in both a corporate capacity on behalf of the Plan sponsor and a fiduciary capacity on behalf of the Plan participants. *See* 29 U.S.C. § 1108(c)(3). Consequently, their bonuses constitute bona fide compensation that they received as executives in exchange for their service to the Company, and not improper payments for their actions as the Plans' fiduciaries. *See Associates in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.,* 941 F.2d 561, 570 (7th Cir.1991) ("Funds are not [kickbacks] when two independent entities agree between themselves as to the payment to be made for services rendered."), *cert. denied,* 502 U.S. 1099, 112 S.Ct. 1182, 117 L.Ed.2d 426 (1992). Accordingly, Plaintiffs cannot base their RICO claims on a violation of Section 1954, because Defendants did not receive improper payments for investing the Plan assets in the MainStay Funds.

**b. Section 664**

■ Plaintiffs also attempt to state a RICO claim under Section 664, which prohibits embezzlement from the Plans. Embezzlement involves "the fraudulent appropriation of the property of another by one in lawful possession thereof." *United States v. Andreen,* 628 F.2d 1236, 1241 (9th Cir.1980). The elements of an embezzlement include (1) the unauthorized (2) taking or appropriation (3) of benefit plan funds (4) with specific criminal intent. *Id.*

■ Plaintiffs have not pled that Defendants' actions were unauthorized or that a taking or appropriation of the Plan assets took place. As stated in the Complaint, the Trustees and Administrator, as the fiduciaries, had exclusive authority over the "control and management" of the investment of Plan assets, and therefore, their investment in the MainStay Funds cannot be considered "unauthorized." In addition, the second element of an embezzlement claim is not satisfied here, because Plaintiffs plead only that the Plan assets were *transferred* from one form of investment to another, not that there was a "taking" or "appropriation." Because their allegations, even if true, do not equate to a claim of theft or embezzlement, Plaintiffs cannot bring their RICO claims against Defendants on the basis of a Section 664 violation.

**c. Sections 1341 and 1343**

Plaintiffs finally attempt to state a RICO claim based on Sections 1341 and 1343, the federal mail and wire fraud statutes. Quite obviously, the existence of fraud is a required element in a mail or wire fraud claim. *See Westlake Plastic Co. v. O'Donnell,* 182 F.R.D. 165, 169 (E.D.Pa.1998) ("In order to plead an in-

stance of mail or wire fraud, the plaintiff must allege a scheme to defraud in which the defendant 'causes' the mails or wires to be used in furtherance of the scheme, together with an allegation of specific intent to commit fraud."); *Advanced Power Sys., Inc. v. Hi–Tech Sys., Inc.*, No. 90–7952, 1992 WL 97826, at *4–5 (E.D.Pa. Apr. 30, 1992) (concluding that plaintiff must plead "the existence of a scheme to defraud, which in the ordinary course of implementation would be likely to involve the use of the mails and the wires" in order to defeat motion to dismiss). Fraud consists of a material misrepresentation of fact, made with the knowledge of its falsity, by the defendant to the plaintiff, on which the plaintiff justifiably relied to its detriment. *Agathos v. Starlite Motel,* 60 F.3d 143, 147 (3d Cir.1995).

 Here, there is no adequate allegation of a misrepresentation or fraudulent scheme, as Defendants fully disclosed the investment of Plan assets in the MainStay Funds. Defendants set forth the ways in which the Plan assets were being invested in the Plans' Form 5500s that they filed annually with the Internal Revenue Service and the Department of Labor. In addition, the MainStay Fund prospectus informed the SEC, the Fund shareholders, and the Plan participants of the amount of fees and expenses charged to the Plans. Consequently, Plaintiffs cannot establish that Defendants concealed or misrepresented the investment of assets in the MainStay Funds when such information was clearly ascertainable through the Plans' Form 5500s and the Fund's prospectus. *See Reynolds v. East Dyer Devel. Co.,* 882 F.2d 1249, 1252 (7th Cir.1989) (finding no attempt to conceal when reports were a matter of public record and defendants could have given them to anyone who asked for them). Moreover, Plaintiffs are unable to sufficiently plead a claim of fraud based on Defendants' alleged non-compliance with their fiduciary duties, because this allegation establishes only a breach of fiduciary duty under ERISA, not a fraudulent scheme under RICO. Because the Court finds that the existence of fraud is lacking, Plaintiffs cannot bring their RICO claims based on the mail and wire fraud statutes.

## B. ERISA CLAIMS

Plaintiffs allege in Counts V–VIII of their Second Amended Complaint that Defendants breached their fiduciary duty in violation of ERISA by using Plan assets for their own corporate business objectives and by failing to perform adequate due diligence before investing Plan assets in the MainStay Funds.

### 1. *Counts v. and VIII*

Defendants move the Court to dismiss New York Life from Counts V and VIII, in which Plaintiffs claim that all Defendants breached their fiduciary duty under ERISA, on the ground that the Company does not have any fiduciary responsibility and, therefore, is not a properly named Defendant. The Court disagrees.

 ERISA provides that a "fiduciary" includes not only "named fiduciaries," but also any person who exercises discretionary control or authority over the plan's management, administration, or assets. *Curcio v. John Hancock Mut. Life Ins. Co.,* 33 F.3d 226, 233 (3d Cir.1994); *see* ERISA 3(21)(A), 29 U.S.C. § 1002(21)(A). As set forth in the Complaint, New York Life was the sponsor of the Plans and, therefore, had the sole responsibility of appointing and retaining the named fiduciaries of the Plans. This responsibility itself is a fiduciary function. *See Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1464–65 (4th Cir.1996) (employer was a fiduciary because of its "power to

appoint, retain and remove [the] plan fiduciaries") (collecting cases); *Hickman v. Tosco Corp.*, 840 F.2d 564, 566 (8th Cir. 1988) ("Tosco is a fiduciary within the meaning of ERISA, and thus subject to the fiduciary standard of care, because it appoints and removes members of the administrative committee that administers the pension plan"). Moreover, implicit in New York Life's power to select the Plans' named fiduciaries is the duty to monitor the fiduciaries' actions, including their investment of Plan assets. *See Leigh v. Engle*, 727 F.2d 113, 134–35 (7th Cir.1984) (finding fiduciary liability based on defendant's failure to loyally and prudently oversee the investment decisions of the fiduciaries whose appointment he controlled). These responsibilities establish, at least for Rule 12(b)(6) purposes, that New York Life exercised discretionary control over the Plans' management and administration. Accordingly, New York Life is a properly named Defendant for Plaintiffs' breach of fiduciary duty claims, and Defendants' Motion to Dismiss Counts V and VIII as they pertain to New York Life will be denied.

### 2. *Counts VI and VII*

Counts VI and VII allege that Defendants' in-house investment of Plan assets constitutes a per se violation of ERISA's prohibited transaction rules set forth in Section 406. (*See* Compl. ¶¶ 206–12.) Plaintiffs' claim fails, however, because Defendants are exempt from the transactional restrictions of Section 406.

▇▇▇▇ Section 406 of ERISA prohibits fiduciaries from involving plan assets in various acts of self-dealing or conflicts of interest. The Secretary of Labor, however, issued Prohibited Transaction Exemption ("PTE") 77–3, which specifically exempts from the prohibited transaction restrictions of Section 406 "the acquisition and sale of shares of a ... 'mutual fund' by an employee benefit plan which covers employees of the mutual fund or the mutual fund's investment adviser or principle underwriter, or an affiliate thereof (hereinafter referred to as an 'in-house' plan)." PTE 77–3, 42 Fed.Reg. 18,734 (1977). PTE 77–3 applies so long as a plan does not:

(a) pay any fees to the investment adviser except via the investment company's payment of its standard advisory and other fees;

(b) pay a redemption fee to any party other than the investment company itself;

(c) pay a sales commission; and

(d) have dealings with the investment company on terms that are less favorable than between the investment company and any other shareholder.

*Id.*

Plaintiffs do not allege that the fees paid by the Plans are not in compliance with the requirements of PTE 77–3, or that the Plans have had dealings with the MainStay Funds on terms that are less favorable than are offered to other shareholders.[1] Consequently, all four conditions of PTE 77–3 are satisfied here and Defendants are thereby exempt from an ERISA claim brought under Section 406. Accordingly, Counts VI and VII, even if true, fail as a

---

1. The MainStay Funds, the investment company that offers the mutual funds in which the Plans hold shares, is the relevant "investment company" for purposes of PTE 77–3. Plaintiffs' argument that New York Life is the investment company has no basis, as insurance companies are specifically excluded from the definition of "investment company" under the Investment Company Act of 1940. *See* 15 U.S.C. § 80a–3(c)(3) (excluding "insurance company" from the definition of investment company).

matter of law and will be dismissed from Plaintiffs' Second Amended Complaint.

## II. DEFENDANTS' MOTION TO COMPEL ARBITRATION

Defendants move to compel arbitration of Plaintiff Mehling's individual claims brought under ERISA Sections 510 and 502(a) and CEPA (Counts IX, X, and XI). Defendants argue that these claims are subject to compulsory arbitration because Mehling, in executing the U–4 Form, "agreed to arbitrate any dispute, claim or controversy between [himself] and [his] firm ... [as] required ... under [the NASD] [R]ules." (Mehling's Form U–4 at 4, ¶ 5.) The NASD Rules, however, require arbitration only if the dispute is between NASD "members" or "persons associated with a NASD member." *See* NASD Code, § 10201(a) (stating that "a dispute, claim or controversy ... between or among *members and/or associated persons,* and/or certain others ... arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under [the NASD] Code") (emphasis added).

■■■ Defendants concede that New York Life was and is not a member of the NASD. (Def. Mot. at 55.) Therefore, they could compel arbitration under the NASD Code only if New York Life was and is a "person associated with a NASD member." Defendants claim that New York Life is an associated person by virtue of *its status as the parent of New York Life Securities,* a wholly-owned subsidiary of New York Life and a member of the NASD. Three circuit courts have addressed the issue of whether a parent corporation qualifies as a "person associated with a member" under the NASD Code, and all have concluded that the term "person" covers only natural persons, and not corporate entities. *See Burns v. New York Life Ins. Co.,* 202 F.3d 616, 620 (2d Cir.2000); *Gardner v. Benefits Communications Corp.,* 175 F.3d 155, 162 (D.C.Cir.1999); *Tays v. Covenant Life Ins. Co.,* 964 F.2d 501, 503 (5th Cir.1992). The Court agrees with this conclusion and consequently holds that, because it is a corporate entity, New York Life cannot avail itself as a "person associated with a NASD member" in order to compel arbitration under the NASD Code. Accordingly, Defendants' motion to compel arbitration of Mehling's individual claims under ERISA and CEPA will be denied.

## III. DEFENDANTS' MOTION TO STRIKE REMAINING CLAIMS

■■■ Defendants also move the Court to strike any claims or allegations remaining in Plaintiffs' Second Amended Complaint on the basis that the Complaint violates both the spirit and the letter of the notice pleading requirements of the Federal Rules of Civil Procedure. Rule 8 directs that a complaint contain "short and plain statements" that are "simple, concise, and direct." Fed.R.Civ.P. 8(a) & (e). Plaintiffs' Second Amended Complaint, "stretching [almost 100] pages and more than [240] paragraphs is hardly a model of concise pleading ... [and there] is no doubt that [it] is amply more specific" than what is required under the Rules. *See Wolfson v. Lewis,* 168 F.R.D. 530, 533–34 (E.D.Pa.1996). Nevertheless, the Court sees no reason pursuant to Rule 8 to strike the remaining claims. *See id.* at 534 (rejecting defendant's request to deny plaintiff's amended complaint, despite its finding that the complaint was "amply more specific" than necessary); *Centennial Sch. Dist. v. Independence Blue Cross,* 885 F.Supp. 683, 690 (E.D.Pa.1994) (denying defendants' motion to strike paragraphs of the amended counterclaims because although they did "go beyond what was necessary to state a claim," the contested

paragraphs did not prejudice the movants). Accordingly, the Court will deny Defendants' motion to strike the remaining claims in Plaintiffs' Second Amended Complaint.

An Order follows.

### ORDER

**AND NOW,** this 29th day of March, 2001, upon consideration of Defendants' Motion for Partial Dismissal of the Second Amended Complaint, To Compel Arbitration of Certain Claims, and To Strike Any Remaining Claims or Allegations, it is **ORDERED** as follows:

1. The Motion to Dismiss Counts I, II, III, and IV of the Second Amended Complaint is **GRANTED.** Accordingly, Counts I, II, III, and IV are **DISMISSED.**

2. The Motion to Dismiss Counts V and VIII of the Second Amended Complaint as they pertain to New York Life is **DENIED.**

3. The Motion to Dismiss Counts VI and VII of the Second Amended Complaint is **GRANTED.** Accordingly, Counts VI and VII are **DISMISSED.**

4. The Motion to Compel Arbitration of Certain Claims is **DENIED.**

5. The Motion to Strike Any Remaining Claims and Allegations is **DENIED.**