James A. MEHLING, et al.

v.

NEW YORK LIFE INSURANCE CO., et al.

No. Civ.A.99–CV–5417.

United States District Court, E.D. Pennsylvania.

July 13, 2005.

R. Joseph Barton, Cohen Milstein Hausfeld & Toll PLLC, Washington, DC, Lawrence P. Schaefer, Minneapolis, MN, for James A. Mehling, et al.

Ellen T. Noteware, Joseph J. Costello, Michael L. Banks, Morgan, Lewis & Bockius LLP, Philadelphia, PA, Andre M. St. Martin, Robert Gallagher, Stephen M. Saxon, Groom Law Group, Roxane N. Sokolove, Piper Rudnick LLP, Washington, DC, for New York Life Insurance Co., et al.

### *MEMORANDUM AND ORDER*

KAUFFMAN, District Judge.

Plaintiffs in this case are current and former employees and insurance agents of Defendant New York Life Insurance Company ("NYL"). They allege, among other things, that NYL caused various NYL-sponsored employee benefit plans in which Plaintiffs participate to improperly invest their assets and that Plaintiffs have suffered financially as a result. Their Revised Third Amended Complaint ("Complaint") includes claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (Counts One and Two) and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Counts Three through Eight). Now before the Court is NYL's Motion to Dismiss Counts One and Two of the Complaint. For the reasons that follow, the Motion will be granted.

## I. PROCEDURAL HISTORY

Plaintiffs filed their initial Complaint in this case on November 1, 1999, their First Amended Complaint on April 14, 2000, and their Second Amended Complaint on July 25, 2000. On March 29, 2001, the Court issued an Order dismissing Plaintiffs' RICO claims (Counts One through Four) and certain of their ERISA claims (Counts Six and Seven) from the Second Amended Complaint. *See* Memorandum and Order, *Mehling v. New York Life Ins. Co.*, 163 F.Supp.2d 502 (E.D.Pa.2001). The Court dismissed the RICO counts, in part, because the Second Amended Complaint failed to adequately plead that Defendants had committed RICO predicate acts. *Id.* at 7—10. On April 12, 2001, Plaintiffs filed a Motion for Partial Reconsideration, which the Court denied. The Court did, however, grant Plaintiffs leave to amend their Complaint in order to "attempt to cure the inadequacies of [Plaintiffs'] previously dismissed claims and [to] allege additional theories of RICO liability that were not explicitly pled or considered by the Court in its previous Order." *See* Order, *Mehling v. New York Life Ins. Co.*, No. 99–5417, (E.D.Pa. March 4, 2002).

On May 7, 2002, Plaintiffs filed a Third Amended Complaint, and then, on February 20, 2003, the Revised Third Amended Complaint, which is the subject of this Motion.

## II. BACKGROUND

The relevant facts, as set out in the Complaint, are as follows: NYL is a mutual life insurance company whose products include mutual funds, life insurance policies, annuity contracts, financial contracts, retirement contracts, and other money management services. Complaint ¶ 38. At all relevant times, NYL maintained both Pension and 401(k) Plans (collectively "the Plans") for its employees. The Pension Plans are traditional defined benefit Pension Plans within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), which means that they were established and are maintained by an employer to provide retirement income to employees. Complaint ¶ 29. The 401(k) Plans are "defined contribution plans" as the term is defined in ERISA § 3(35), 29 U.S.C. § 1002(35), and are structured such that "each participant is credited with an individual account funded through a combination of participant and employer contributions." Complaint ¶ 32.

Both the Pension Plans and the 401(k) Plans are managed by the same Board of Trustees ("the Trustees"). Complaint ¶ 41. At all relevant times, the Trustees have had "exclusive discretion and control over the selection of the investment vehicles offered as options to [the 401(k) Plan participants] for the investment of their accounts." Complaint ¶ 34.

The gravamen of Plaintiffs' RICO claim is that NYL engaged in a scheme to fraudulently induce the Trustees to invest the Plans' assets into "certain NYL-proprietary investment products—namely, NYL's former institutional and now retail line of mutual funds" ("the Funds"). According to the Complaint, Linda Livornese ("Livornese"), an NYL officer and employee was one of the central figures in the scheme. Complaint ¶ 7. Beginning in 1989 and continuing through at least 1999, Livornese served as an "Investment Advisor" and fiduciary to the Trustees and Plans. Complaint ¶ 10. The Complaint alleges that while acting in that capacity, Livornese sought to persuade the Trustees to invest the Plans' assets into the NYL Funds, even though she knew that the Funds were a grossly inappropriate investment

vehicle for the Plans. Complaint ¶ 10.[1] The Complaint attributes to Livornese a host of material omissions and misleading or false representations, which she employed as part of a campaign to persuade the Trustees to invest in NYL products, and alleges that "Livornese committed this fraud, on behalf of herself and at the behest of, and with the knowledge and participation of NYL ... as part of a conspiracy to defraud the Plans in order to enrich NYL[.]" Complaint ¶ 12, 85.

The Complaint further alleges that NYL's scheme caused an injury cognizable under RICO both to the Plans and to the individual participants in the 401(k) Plans. The alleged injury to the Plans lies in their having needlessly overpaid investment management costs by "tens of millions of dollars or more and [the loss of] investment earnings on those overpayments." Complaint ¶ 158. Because of their "beneficial ownership interest" in their account balances, the 401(k) Plan participants, in turn, were injured "to the same extent as the 401(k) Plans themselves, distributed among the participants in proportion to their account balances at the time of each such loss." Complaint ¶ 159.

In Counts One and Two of the Complaint, Plaintiffs contend that NYL's scheme to defraud the Plans constitutes a pattern of racketeering activity, in violation of RICO, and accordingly seek to collect treble damages on the alleged injuries. Plaintiffs have pled their RICO claims in the alternative: in the first version, Plaintiffs seek to bring the claims derivatively on behalf of the Pension and 401(k) Plans; in the alternative, Plaintiffs propose to bring the RICO claims as a class, the members of which would include all the participants in the 401(k) Plans.

## III. ARGUMENT

In its Motion to Dismiss, NYL contends that Plaintiffs lack standing to bring their RICO claims, regardless of whether the claims are structured derivatively or directly. The Court will consider each possibility in turn.

### A. Plaintiffs' Standing to Bring the RICO Claims Derivatively

■ NYL does not dispute that *the Plans* would have standing to bring the RICO claims. What it does challenge, though, is Plaintiffs' right to bring the claims derivatively on the Plans' behalf. Thus, the question before the Court is whether participants in an ERISA plan are entitled to bring a derivative action on behalf of their Plan where the cause of action is *not* one of the specifically enumerated ERISA remedies.

As a preliminary matter, the Court finds that the question is governed by ERISA law. Congress understood ERISA to be a "comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (quoting *Nachman Corp. v. Pension Benefit Guar., Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980)). A statute that is intended to regulate virtually every aspect of ERISA plans should clearly govern a question as fundamental the one presented here, which concerns the remedies available to ERISA plan participants.

---

**1.** The Complaint contends that "[l]ower fees for identical, if not superior, investment management services could have been obtained had the Plans ... contracted for direct management of their assets or been assessed fees which reflected the Plans' true purchasing power as large institutional investors." Complaint ¶ 65.

■ The Court's conclusion finds further support in the model of the shareholder derivative action, under which shareholders bring suit on behalf of the corporation in which they hold stock. Shareholders have the right to bring such suits only because corporate law has allowed for them. Just as corporations are "creatures of corporate law," ERISA benefit plans are ultimately rooted in the ERISA statute. An ERISA plan participant's ability to bring a derivative suit on behalf of his or her plan must therefore be a function of ERISA law. *See In re Sunrise Securities Litig.*, 916 F.2d 874, 879 (3d Cir.1990) (finding that because corporations are "creatures of corporate law," questions about the derivative nature of a shareholder RICO claims should be governed by state corporate law). Thus, if a license exists for ERISA plan participants to bring a derivative action on behalf of their plan, it must be found in ERISA law.

No such authority exists, however. Plaintiffs attempt to find a basis for their derivative action in the law of trusts, in support of which they rely on *Struble v. New Jersey Brewery Employees' Welfare Trust Fund*, 732 F.2d 325 (3d Cir.1984). The plaintiffs in *Struble* were former employees of a bankrupt brewery who were covered under an ERISA trust fund that had been created to "finance the purchase of health, life, and disability insurance policies." *Struble*, 732 F.2d at 328. Two of the asserted claims were only available to the Trustees of the funds, and so the plaintiffs sought to bring them derivatively. The Third Circuit found that the plaintiffs could bring the claims derivatively, so long as they could establish that the Trustees' decision not to bring the claims themselves constituted a breach of fiduciary duty. *Id.* at 336–37. This conclusion was based on common law trust principles, according to which the beneficiary may bring a suit at law against the trustee joining the obligor as codefendant in cases where the "trustee holds in trust a contract against a third person and the trustee improperly refuses to bring an action to enforce the contract." *Id.* at 337.

Plaintiffs claim that the same principle governs their right to have their interests vindicated under RICO. They contend that the Trustees of the plans have breached their fiduciary duty in failing to bring RICO claims against NYL, and that this breach licenses Plaintiffs to stand in the Trustees' shoes and bring the claims themselves.

*Struble*, however, is distinguishable in an important sense. In *Struble*, the plaintiffs lacked a *direct* (as opposed to derivative) remedy within ERISA; here, the opposite is true—ERISA does provide a direct cause of action for the injury Plaintiffs have alleged. The *Struble* court emphasized that ERISA expressly reserves the relief the plaintiffs in that case were seeking for fiduciaries, and that consequently, the plaintiffs would lack an ERISA remedy if they were not allowed to proceed derivatively. *Struble*, 732 F.2d at 338 ("It is clear, therefore, that although the beneficiaries of a plan may have a right to injunctive relief for unpaid contributions ... they do not have a direct action for damages."). In this case, by contrast, ERISA expressly provides a civil remedy to address the injuries Plaintiffs have alleged. Indeed, Plaintiffs are pursuing those remedies in Counts Three through Eight of the Complaint.

Plaintiffs are thus asking the Court to go much further than the Third Circuit did in *Struble*, and hold that ERISA allows benefit plan participants who already have a cause of action under the statute to pursue an additional remedy derivatively. That additional step finds no support in *Struble* and would be contrary to the inter-

nal logic of ERISA. As noted above, ERISA is meant to be a "comprehensive and reticulated statute[.]" *Mertens*, 508 U.S. at 251, 113 S.Ct. 2063. As such, ERISA does not merely define the rights of plan participants; it also explicitly sets out the remedies for violations of those rights. Section 502(a) thus provides a number of specific civil enforcement mechanisms, by which ERISA participants may vindicate their interests under the statute. These enforcement mechanisms represent Congress' determination as to what remedies would be available to employees in Plaintiffs' position.

To read additional remedies into the statute, as Plaintiffs urge, would be inconsistent with Congress' intention that ERISA provide a comprehensive regulatory framework for employee benefit plans. *See Massachusetts Mut. Life Ins. v. Russell*, 473 U.S. 134, 147, 105 S.Ct. 3085, 87 L.Ed.2d 96 (refusing to imply additional remedies and stating that "[w]e are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA.").

In sum, the fundamental problem with Plaintiffs' attempt to bring a derivative claim on the Plans' behalf is the absence of authority. There is simply no basis for Plaintiff's derivative claim either in ERISA or the case-law interpreting it, including *Struble*. Accordingly, the Court concludes that Plaintiffs lack standing to bring their RICO claims derivatively on behalf of the Plans.

B. *Plaintiffs' Standing to Bring to Bring the RICO Claims Directly*

 As noted above, Plaintiffs have pled the RICO counts in the alternative as direct (as opposed to derivative) claims by the participants in the 401(k) Plans. NYL contends that Plaintiffs also lack standing to bring this version of the RICO claim, because the Complaint fails to establish that Plaintiffs' injuries were proximately caused by the alleged racketeering conduct.

RICO provides a cause of action for treble damages to "any person injured in his business or property *by reason of*" unlawful racketeering activity. 18 U.S.C. § 1964(c) (emphasis added). Courts have interpreted the "by reason of language" in § 1964(c) as setting forth a standing requirement: recovery under § 1964(c) is only available to those plaintiffs whose injuries have been proximately caused by unlawful racketeering activity. *Holmes v. Sec. Investor Protect. Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).

The Third Circuit has recently clarified that courts should consider the following six factors in determining whether proximate cause exists:

(1) the causal connection between defendant's wrongdoing and plaintiff's harm; (2) the specific intent of defendant to harm plaintiff; (3) the nature of plaintiff's alleged injury ...; (4) 'the directness or indirectness of the asserted injury'; (5) whether the 'damages claim is ... highly speculative'; and (6) 'keeping the scope of complex antitrust trials within judicially manageable limits,' i.e., 'avoiding either the risk of duplicate recoveries on the one hand, or the danger of complex apportionment of damages on the other.'

*Anderson v. Ayling*, 396 F.3d 265, 270 (3d Cir.2005) (quoting *Steamfitters Local Union No. 420 Welfare Fund*, 171 F.3d 912, 924 (3d Cir.1999)). The Court will accordingly consider how each of those factors apply to the facts of this case.[2]

---

**2.** In *Holmes v. Securities Investor Protection* *Corp.*, 503 U.S. 258, 269, 112 S.Ct. 1311, 117

### 1. The causal connection to Plaintiffs' harm

As to the first factor, the facts as Plaintiffs have alleged them clearly show a causal connection between the alleged racketeering activity and Plaintiffs' injury. Had NYL informed the Trustees that the NYL-owned funds were orders of magnitude more expensive than other investment vehicles, the 401(k) Plans could have been much more profitable, which, in turn, would have guaranteed greater returns for the participants' individual accounts.

### 2. Specific Intent

The second factor also favors a finding of proximate cause. The Complaint clearly alleges that NYL specifically intended to harm the 401(k) Plans and there is no meaningful conceptual distinction to be drawn between an intent to harm a benefit plan, and an intent to harm those who would benefit from it.

### 3. The Nature of Plaintiffs' Alleged Injury

The third factor, in contrast, weighs against a finding of proximate cause. The third factor is a measure of the extent to which the plaintiff is within the class of persons the statute at issue was enacted to protect. *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 538, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *Steamfitters*, 171 F.3d at 924. Congress' intentions when it enacted RICO are well-documented: the statute was meant to "address the problem of organized crime 'by strengthening the legal tools . . . by establishing

new penal prohibitions . . . and by providing enhanced sanctions and new remedies to deal with unlawful activities of those engaged in organized crime.'" *Beck v. Prupis*, 529 U.S. 494, 496, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000) (quoting Pub.L. 91–452, 84 Stat. 922). Undeniably, RICO's prohibition of racketeering activity has been widely applied outside the organized crime context, such that the statute has "evolved into something quite different from the original conception of its enactors." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 500, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). But that does not change the fact that Congress originally intended that RICO be a tool for combating organized crime, and for protecting the victims of such crime. *See Sinclair v. Hawke*, 314 F.3d 934, 943 (8th Cir.2003) (stating that "[t]he major purpose behind RICO is to curb the infiltration of legitimate business organizations by racketeers"). It is that intention that the Court must consider in its application of the third proximate cause factor.

Plaintiffs plainly have not alleged that NYL has become infiltrated by organized crime. Instead, the Complaint depicts NYL as a legitimate company pursuing lawful business objectives—in this case, the cultivation of its mutual funds. In its pursuit of that objective, NYL may have violated its fiduciary duties to Plaintiffs, but that does not mean that the company has come under the control of organized crime. Nor does it make Plaintiffs into victims of organized crime. Accordingly, the Court finds that the third factor

L.Ed.2d 532 (1992), the Supreme Court set out three policy considerations that are meant to guide the RICO proximate cause analysis: (1) the difficulty in ascertaining the amount of a plaintiff's damages attributable to a violation, as distinct from other, independent, factors; (2) the complexity of the calculations for

apportionment of damages; and (3) the extent to which other remedies are available to redress the plaintiff's injuries. Because all three of those factors already figure in to the broader six factor test the Third Circuit applied in *Anderson*, there is no need to perform a separate *Holmes* analysis.

weighs against a finding of proximate cause.[3]

### 4. The Directness of Plaintiffs' Alleged Injury

█ Under the fourth factor, the Court considers whether the plaintiff's injury is the direct consequence of the racketeering conduct, or whether it is merely derivative of the harm suffered by a third party. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268–69, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (holding that "a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [stands] at too remote a distance to recover.").

NYL argues that the injuries on which Plaintiffs base their suit—the financial loss the plan participants suffered—are ultimately derivative of the losses sustained by the 401(k) Plans. To that extent, NYL argues, Plaintiffs' injuries are an indirect rather than proximate result of the alleged racketeering activity, and do not confer standing. Plaintiffs respond that their injuries are direct, because they "have a beneficial ownership interest in their account balances and suffer the gains and losses in their accounts as the immediate and necessary consequence of any loss suffered by the Plans themselves[.]" Complaint ¶ 159.

A number of courts have found that injuries analogous to that of Plaintiffs' is too indirect for proximate cause to exist. It is well-established, for example, that the causal nexus between unlawful conduct that harms a corporation and the injury that the corporation's shareholders suffer when share prices fall is too attenuated to support a finding of proximate cause. *In re Sunrise Securities Litig.*, 916 F.2d 874, 886 (3d Cir.1990) (rejecting the argument that shareholders may sue for "diminution in share value"); *Rylewicz v. Beaton Serv.*, 888 F.2d 1175, 1179 (7th Cir.1989) (noting that all circuits that have considered the matter have concluded that shareholders lack standing to bring individual claims under RICO for diminution in corporation's value). An even more apt analogy can be found in *Kauffman v. The Dreyfus Fund, Inc.*, 434 F.2d 727 (3d Cir.1970), where the Third Circuit held that injuries to a mutual fund only indirectly affect the fund's shareholders. Significantly, the panel explicitly rejected the very same argument Plaintiffs in this case have made—that their injury is direct to the extent that a fund's shareholders suffer any injury the fund suffers in proportion to their holdings. *Kauffman*, 434 F.2d at 733. This argument, the panel found, ignores a fundamental tenet of corporate law: that a fund and its shareholders are two distinct legal entities. *Id.* The same is true in this case. Plaintiffs have a separate legal identity from the 401(k) Plans they have chosen to participate in. While Plaintiffs' injury may be a consequence of the alleged injury to the fund, the two injuries are not the same thing. To that extent, Plaintiffs' injuries must be considered indirect.

---

**3.** The Court's application of the third factor should *not* be read as implying that civil RICO suits may only target companies that have become involved with organized crime. Undeniably, RICO's prohibition of racketeering activity has been widely applied outside the organized crime context, such that the statute has "evolved into something quite different from the original conception of its en-

actors." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 500, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The relation between a plaintiff's injury and Congress' legislative intent is just one of the six factors courts consider in the proximate cause analysis. Indeed, in light of the firmly established principle that RICO extends beyond organized crime, it is clear that the third factor is one of the least significant.

Another important consideration in the directness inquiry is the extent to which there are other means available to vindicate RICO's interest in deterring unlawful conduct. *Steamfitters,* 171 F.3d at 927 ("Subsumed in the 'directness' factor is also the issue of whether other, more directly injured parties could vindicate the polices underlying the ... laws."); *Callahan,* 182 F.3d at 267 (holding that "a civil RICO action is not specifically required to vindicate [the statute's] general deterrence interest," and that "the availability of other forms of deterrence weighs against a finding of proximate cause."); *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.,* 191 F.3d 229, 241 (2d Cir. 1999) ("Especially where such other actions are available, the lack of a RICO damages remedy for even direct personal injury ... actually weighs against RICO standing for parties ... alleging harms that are purely contingent on personal injuries suffered by others."); *Bona v. Barasch,* 2003 WL 1395932 at *29 (S.D.N.Y. March 20, 2003) (finding that alleged injuries were indirect for RICO standing purposes based on the availability of ERISA claims).

As has been noted above, ERISA provides a cause of action to redress precisely the injuries Plaintiffs have alleged here and Plaintiffs have, in fact, attempted to avail themselves of that remedy. Accordingly, the Court finds that the fourth factor also weighs against a finding of proximate cause.

### 5. The speculative nature of Plaintiffs' injuries

At issue in the fifth factor is the extent to which Plaintiffs' injuries might be attributable to causes independent of the predicate acts they have alleged. *See Anderson,* 396 F.3d at 270—71. According to the allegations in the Complaint, Plaintiffs' financial loss is attributable to NYL's alleged racketeering conduct. But there are other independent causes as well. At least some of Plaintiffs' loss owes to mismanagement by the Trustees. *See* Complaint ¶ 66 (alleging that "[t]hroughout the relevant time period ... the Trustees failed to adequately investigate or obtain, on behalf of the Plans, the substantial and readily available discounts that large investors routinely receive for placing large sums of money with advisors to manage."). Thus, the fifth factor also weighs against a finding of proximate cause.

### 6. The difficulty in apportioning damages

Apportioning damages would not pose a problem in this case, since the Complaint alleges that each of the 401(k) Plan participants have "suffered an injury to the business or property interest in their account balances to the same extent as the 401(k) Plans themselves, distributed among the participants in proportion to their account balances at the time of each such loss." Complaint ¶ 159. Accordingly, the sixth factor weighs in favor of standing.

### 7. Weighing of the Six Factors

Having considered the six factors, the Court finds that proximate cause is lacking in this case. In reaching this conclusion, the Court gives particular weight to the indirectness of Plaintiffs' injury and the availability of ERISA remedies as considered under the fourth factor. *See Laborers Local 17,* 191 F.3d at 235 ("[D]irect injury is a key element for establishing proximate causation, independent of and in addition to other traditional elements of proximate cause."). The first and second factors, in contrast, played a relatively smaller role in the analysis. *See Steamfitters,* 171 F.3d at 925 (holding that the first

and second factors are not dispositive in the proximate cause analysis).

The Court's conclusion finds further support in the fact that Plaintiffs are unable to point to even a single case in which an ERISA plan participant has been found to have standing to sue under RICO for financial losses incurred by his or her plan. In contrast, courts that have considered the question have found proximate cause lacking. *Bona*, 2003 WL 1395932 at *29; *Donohue v. Teamsters Local 282 Welfare Funds*, 12 F.Supp.2d 273, 278 (E.D.N.Y. 1998); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 737 F.Supp. 792, 798 (S.D.N.Y.1990).

In sum, the injuries Plaintiffs have alleged were not proximately caused by NYL's alleged racketeering conduct. Plaintiffs, accordingly, lack standing to bring their claims under RICO.

## IV. CONCLUSION

Plaintiffs are without standing to bring their claims either directly or derivatively on behalf of the 401(k) Plans. Because further amendments to the Complaint will not rectify these standing deficiencies, Counts One and Two will be dismissed with prejudice. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332, (3d Cir.2002). An appropriate Order follows.

### *ORDER*

AND NOW, this 13TH day of July, 2005, upon consideration of NYL's Motion for Partial Dismissal of the Revised Third Amended Complaint (docket no. 99), and Plaintiffs' Opposition thereto, it is **OR-DERED** that the Motion is **GRANTED**. Accordingly, Counts One and Two are **DISMISSED WITH PREJUDICE**.