**HONOLULU JOINT APPRENTICE-SHIP AND TRAINING COMMITTEE OF UNITED ASSOCIATION LOCAL UNION NO. 675, Plaintiff,**

v.

**James H. FOSTER, III, Defendant.**

**No. CIV. 00–00496BMK.**

United States District Court,
D. Hawaii.

June 19, 2001.

James K. Tam, Fred I. Waki, Alston Hunt Floyd & Ing, Honolulu, HI, for plaintiff.

Michael L. Freed, Kelly G.A. Nakano, Michael L. Freed & Associates, Honolulu, HI, for defendant.

*ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT*

KURREN, United States Magistrate Judge.

This is an action to recover the cost of training Defendant James H. Foster, III ("Defendant") in the apprenticeship training program administered by Plaintiff Honolulu Joint Apprenticeship and Training Committee of United Association Local Union No. 675 ("Plaintiff"). Cross-motions for Summary Judgment came on for hearing before this court on March 2, 2001. Fred I. Waki, *Esq.*, appeared on behalf of Plaintiff; Kelly G.A. Nakano, *Esq.*, appeared on behalf of Defendant. After careful consideration of the motions and the arguments of counsel, the court finds that Plaintiff is not entitled to the relief it seeks under the Employee Retirement Income Security Act ("ERISA") because the monetary damages Plaintiff seeks are not equitable in nature. Accordingly, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Cross–Motion for Summary Judgment is GRANTED except as to attorney's fees.

## BACKGROUND

Plaintiff is a committee jointly comprised of employer and employee representatives from the plumbing and pipefitting industry. Plaintiff administers an apprenticeship program aimed at training apprentices for work in the plumbing and pipefitting industry ("apprenticeship training program" or "program"). Funding for the program is provided by the Plumbing & Mechanical Contractors Association of Hawaii and Local 675 of the United Association of Journeymen and Apprentice Plumbers & Pipefitters of the U.S. & Canada ("PAMCAH–UA Local 675") Training Fund (known as the "PAMCAH–UA Local 675 Training Fund," hereinafter "Training Fund"), which in turn is funded by contributions from employers who are signatories to labor-management agreements with the PMACAH–UA Local 675.

In 1986, the Training Fund implemented a program of loan agreements[1] and notes[2]

---

1. These loan agreements are entitled "Apprenticeship Scholarship Loan Agreement Between Apprentice and Honolulu Joint Apprenticeship and Training Committee of United Association Local Union No. 675."

2. These notes are entitled "Promissory Note for Scholarship Loan Agreement."

(collectively "scholarship loan agreements" or "SLAs") for the purpose of covering the costs of each apprentice's training. The language in the loan agreements provides that an apprentice repay the costs of his apprenticeship training by in-kind credit earned by working for a "participating employer." In the alternative, if the apprentice does not work for a participating employer, the loan agreements provide that the apprentice must repay the costs of his apprenticeship training in cash plus interest.[3]

On January 10, 1994, Defendant and Plaintiff entered into an Apprenticeship Agreement, and Defendant began his apprenticeship training program in the spring of 1994.[4]

Plaintiff contends that Defendant executed his first SLA in 1995, then would execute similar SLAs each year after, covering that particular year of apprenticeship training. Plaintiff's Opposition to Defendants's Separate and Concise Statement of Facts in Support of Defendants's Motion for Summary Judgment, at 2. Defendant, on the other hand, asserts that the first five SLAs were executed on April 11, 1998, covering his training from spring through 1997, and the final SLA on December 1, 1998, covering his remaining period of training.[5]

Defendant completed the apprenticeship training program in the Fall of 1998. Defendant alleges that he was not able to obtain employment with a participating employer. Accordingly, on September 23, 1999, Defendant notified Plaintiff that he was working for a non-participating employer.

3. The loan agreements state in pertinent part:
5. COVENANTS OF THE APPRENTICES. Upon receipt of any training provided pursuant to the agreement, the Apprentice will neither seek nor accept any work as an employee or independent contractor from an employer engaged in nor become an employer engaged in any general mechanical, plumbing or pipefitting work or any other work covered by the Constitution of the United Association of Journeyman and Apprentices of the Plumbing & Pipefitting Industry of the United States and Canada, AFL–CIO, unless such employment is performed under the terms of a collective bargaining agreement that provides for the payment of contributions by such employer to the Committee or like joint apprenticeship committee. Apprentice shall provide Committee with income tax returns and other information requested by the Committee from time to time to certify whether Apprentice is in compliance with this covenant.
6. BREACH OF AGREEMENT. An immediate breach of this Agreement will result if the Apprentice fails to comply with covenants in paragraph 5 above.
7. REPAYMENT BY CREDITS. An Apprentice who is not in breach of the Agreement will receive a credit for such employment to reduce the balance of the Scholarship Loan in accordance with the Repayment Schedule in the Note.
8. CONSEQUENCES OF BREACH. If the Apprentice breaches this Agreement, all amounts due and owing on the Scholarship Loan(s), reduced by any credit received by the Apprentice pursuant to Paragraph 7 hereof, or by any cash payments made, will become immediately due an[sic] payable, together with interest at 12% annum from the date of this Agreement, and all costs of collection hereof, including reasonable attorney's fees and court costs.

4. Prior to beginning the program, Defendant received an orientation to the program. Plaintiff contends that its training coordinator gave Defendant the orientation and that during the orientation the coordinator discussed with Defendant the terms and conditions of the SLAs Defendant was to sign in order to receive training. Defendant contends that he never received such information during the orientation.

5. At his deposition, Defendant attested to having signed one SLA per year. However, the first five SLAs were signed by Plaintiff's chairman, and notarized, on April 11, 1998, and the last SLA was signed and notarized on December 1, 1998.

The combined principal total of all Defendant's loan agreements and notes is $13,183.92.

On July 25, 2000, Plaintiff filed a Complaint, which it amended on August 4, 2000, in which it sought equitable relief in the amount of $14,664.09 [6], plus attorney's fees and costs, pursuant to ERISA. On December 7, 2000, Plaintiff filed a Motion for Summary Judgment. The next day, Defendant filed a Cross–Motion for Summary Judgment. On January 12, 2001, Defendant filed his Opposition to Plaintiff's Motion for Summary Judgment. Plaintiff then filed a Reply to Defendant's Cross–Motion for Summary Judgment on January 16, 2001, to which Defendant replied on February 19, 2001.

## DISCUSSION

### A. Entitlement to Relief Under ERISA

Plaintiff brings its claims for "equitable relief" of restitution and unjust enrichment pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.* Plaintiff's apprenticeship training program and the fund providing for the program are "welfare benefit plans" under ERISA, 29 U.S.C. § 1002(1)(A).[7]

Actions brought pursuant to ERISA are governed by § 502(a)(3), which provides that a civil action may be brought "by a participant, beneficiary, or fiduciary ... to obtain other appropriate equitable relief ... (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3)(B). The parties do not dispute that Plaintiff is a fiduciary and Defendant a beneficiary of the plan. Neither do the parties dispute that this action is appropriately brought pursuant to ERISA. The question, rather, is whether the monetary damages Plaintiff seeks for Defendant's breach of the terms of the plan [8] constitutes "other appropriate equitable relief." Defendant argues that it does not, thus precluding Plaintiff from recovery on its claims.

In support of its position that "equitable relief" under ERISA can include money damages, Plaintiff cites three cases from "other jurisdictions [which] have enforced such apprenticeship [SLAs] almost identical to the [SLAs] executed between the parties." Motion for Summary Judgment, at 5. While the circumstances of the cases Plaintiff cites are similar, however, the cases neither are controlling nor address the issues this court must consider here.[9]

---

**6.** This figure takes into account credit to Defendant for the period of time Defendant worked for a participating employer, plus interest under the SLAs. *See* Motion for Summary Judgment, at 5.

**7.** Section 1002(1) defines an "employee welfare benefit plan" as

> any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants ..., (A) apprenticeship or other training programs, or ... scholarship funds ....

> 29 U.S.C. § 1002(1).

**8.** Here, the plan consists of the Training Fund agreements including the SLAs.

**9.** For example, in *National Training Fund for Sheet Metal and Air Conditioning Industry ("Fund") v. Maddux,* 751 F.Supp. 120 (S.D.Texas 1990), plaintiff sought to recover a money judgment against defendant-apprentice for his breach of the apprenticeship training agreement. Defendant had gone to work for a non-contributing employer, and under the training contract's work-or-pay terms, he owed the plaintiff Fund. Defendant, proceeding *pro se,* argued that the contract was against public policy as it required him either to work for a company that paid for his education or to repay the cost of his training himself, thus constituting an unlawful restraint of trade. Defendant did not raise any ERISA-based defenses. The court held that obligating the apprentice to repay the costs of his training in the event that he works for a non-contributing employer was not void as a

Defendant, on the other hand, contends that subsequent to the Supreme Court's decision in *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), "equitable relief" under ERISA has been narrowly defined by the Ninth Circuit to exclude monetary relief, save for one exception which does not apply here.

"The leading case interpreting the phrase 'other appropriate equitable relief' is *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)." *FMC Medical Plan v. Owens,* 122 F.3d 1258, 1260 (9th Cir.1997) (full citation omitted). In *Mertens,* the Court found that "equitable relief" as used in ERISA only refers to the traditional forms of equitable relief—injunction, mandamus, and restitution—but not compensatory damages. *See Mertens,* 508 U.S. at 256, 113 S.Ct. 2063.[10] Money damages, the Court noted, are the classic form of legal relief. *Id.* at 255, 113 S.Ct. 2063. The Court explained, however, that a limited way to get monetary relief under ERISA is through restitution of "ill-gotten" gains.[11] *See Id.* at 260, 113 S.Ct. 2063.

---

matter of public policy as unlawful restraint of trade, and entered judgment in favor of plaintiff-Fund.

In *Milwaukee Area Joint Apprenticeship Training Committee, etc. v. Howell,* 67 F.3d 1333 (7th Cir.1995), the plaintiff Training Committee, an ERISA fiduciary, brought a breach of contract action against a former apprenticeship trainee for failure to repay training costs as required by the scholarship loan plan agreements as he had gone to work for a non-contributing employer. The court of appeals reversed and remanded with instructions to enter summary judgment for the plaintiff, finding that (1) defendant breached his loan agreement; (2) under ERISA, plaintiff owed no fiduciary duty to defendant in enacting the scholarship loan plan; and (3) the repayment provision of the scholarship loan plan did not violate Wisconsin's restrictive covenant in employment contracts statute. The issue whether contract damages are available under § 1132(a)(3) was neither raised nor discussed on appeal.

Finally, in *Southeastern Sheet Metal Joint Apprenticeship Training Fund, et al. v. Barsuli,* 950 F.Supp. 1406 (E.D.Wis.1997), the plaintiff brought what the court termed a "collection action" against defendant, a former participant in the Southeastern Sheet Metal workers' apprenticeship job training program, for reimbursement of the costs of his training. The plaintiff alleged that contrary to the terms of defendant's SLAs, the defendant accepted employment with a non-contributing employer. Defendant filed a counter-claim, arguing that plaintiff had failed to join an indispensable party and that the SLAs were unenforceable because they were not "registered" with state or local authorities. The court dismissed defendant's counter-claim and granted Plaintiff's motion for summary judgment, finding that the defendant had breached the plain-meaning terms of the SLAs.

**10.** Stating that

> ... it remains a question of interpretation in each case which meaning is intended. In the context of the present statute, we think there can be no doubt. Since *all* relief available for breach of trust could be obtained from a court of equity, limiting the sort of relief obtainable under § 502(a)(3) to "equitable relief" in the sense of "whatever relief a common-law court of equity could provide in such a case" would limit the relief *not at all.* We will not read the statute to render the modifier superfluous. Regarding "equitable" relief in § 502(a)(3) to mean "all relief available for breach of trust at common law" would also require us either to give the term a different meaning there than it bears elsewhere in ERISA, or to deprive of all meaning the distinction Congress drew between "equitable" and "remedial" relief in § 409(a), and between "equitable" and "legal" relief in the very same section of ERISA ....

*Mertens,* 508 U.S. at 257–58, 113 S.Ct. 2063 (internal citations and footnotes omitted) (emphasis in the original).

**11.** Plaintiff further argues that as long as it pleads restitution and unjust enrichment together, it is entitled to monetary recovery, stating that "[t]he 9th Circuit [in *Mertens* ] upheld the district court's finding that restitution in the form of monetary recovery was not

The Court defined "ill-gotten gains" as money obtained through "fraud or wrong-doing." *Id.* at 260, 113 S.Ct. 2063.

Indeed, post-*Mertens*, in *McLeod* and its progeny, the Ninth Circuit has been clear in its mandate that restitution in the form of monetary relief is only available where the beneficiary or plan participant received the money through fraud or wrong-doing.

*McLeod v. Oregon Lithoprint Inc.*, 102 F.3d 376 (9th Cir.1996), was before the Ninth Circuit on remand from the Supreme Court for further consideration in light of *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). McLeod had filed the action against her employer, arguing that her employer's ERISA plan administrator breached a fiduciary duty to her by failing to notify her that she had become eligible to apply for coverage under a cancer insurance policy. McLeod developed cancer. She then sought judgment against her employer for the amount of benefits that would have been paid to her had she elected coverage under the cancer policy, and for compensatory damages for emotional distress. The question before the Court was whether the relief which McLeod was requesting—compensatory damages—was available under ERISA § 503(a)(3). The court found that, again, it was not, stating that "[t]he relief which McLeod seeks is not 'equitable relief.' She does not seek an injunction, mandamus, or restitution. The complaint does not allege fraud on the

part of the plan fiduciaries. There is no allegation of a fund which was wrongfully withheld from McLeod."

In *FMC Medical Plan v. Owens*, 122 F.3d 1258 (9th Cir.1997), the FMC Short-and–Long–Term Disability Plans paid Owens disability benefits after he was injured in an automobile accident. Each of the FMC Plans contained a declaration that:

If you bring a liability claim against any third party, benefits payable under this Plan must be included in the claim, and when the claim is settled you must reimburse the Plan for the benefits provided.... [P] Unless you sign the Company's third party reimbursement form, the Claims Administrator will not process any claim where there is a possible liability of a third party.

*Id.* at 1259. Owens signed the reimbursement form, which provided:

I agree for myself and dependent(s), to reimburse FMC Corporation for any amounts paid by the plan and recovered from another person or company. If I bring a claim against any party, benefits payable under this Plan must be included in the claim, and when the claim is settled I must reimburse the Plan for the benefits provided.

*Id.* Owens later settled his claim against the owner of the vehicle that injured him for $100,000. FMC sued Owens to enforce the terms of the plan and obtain "equitable reimbursement" under 29 U.S.C.

available for the plaintiffs because they had failed to allege unjust enrichment to support their restitution claim[,]" Reply, at 6, a decision, Plaintiff notes, that was upheld by the Supreme Court. Plaintiff asserts that because it can prove each element of an unjust enrichment claim, it is entitled to relief. Plaintiff's argument fails for two reasons. First, Plaintiff misreads the Supreme Court's analysis in *Mertens*. The Supreme Court in *Mertens* clearly limits monetary recovery under ERISA to restitution of ill-gotten gains, re-

gardless whether a claim for unjust enrichment is alleged. Second, "unjust enrichment is an element of a restitution claim[,]" making it redundant of a restitution claim, and must be disregarded. *See Metropolitan Life Ins. Co., Inc. v. Mann*, 2000 U.S. Dist. Lexis 15354, at *15–16 (C.D.Cal. Oct. 16, 2000) (dismissing plaintiff's claim for unjust enrichment as "redundant" of plaintiff's claim for restitution) (citing *Federal Trade Commission v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir.1994); *United States v. Dae Rim Fishery*

§ 1132(a)(3). The district court denied Owens' motion to dismiss and ultimately granted summary judgment in FMC's favor. *Id.* at 1259–60.

The Ninth Circuit reversed, holding that reimbursement was not an available remedy under § 1132(a)(3). It noted that the Supreme Court in *Mertens* had defined "restitution" as "the return of 'ill-gotten' assets or profits taken from a plan." *Owens,* 122 F.3d at 1261 (quoting *Mertens,* 508 U.S. at 260, 113 S.Ct. 2063). Applying this definition, it noted specifically that "Owens did not obtain FMC's funds by any fraud or wrong-doing," and found that FMC sought to assert "a breach of contract claim for monetary relief, albeit under its classification of 'equitable reimbursement.'" The Court held that "such monetary relief [was] not available under section 1132(a)(3)" *Id.* (citing *McLeod,* 102 F.3d at 378) ("Equitable relief in the form of the recovery of compensatory damages is not an available remedy under 29 U.S.C. § 1132(a)(3)").

In a similar case, *Reynolds Metals Co. v. Ellis,* 202 F.3d 1246 (9th Cir.2000), *cert. dismissed,* —— U.S. ——, 121 S.Ct. 674, 148 L.Ed.2d 652 (2000), the Ninth Circuit held that an ERISA plan fiduciary was not entitled to reimbursement of medical payments it had made after a plan participant obtained a third party settlement arising out of the accident in which he was injured. *Ellis,* 202 F.3d at 1247. The Reyn-

olds Metal plan contained a contractual reimbursement provision stating that the plan participant was required to reimburse the plan for medical expenses paid on his behalf up to the amount he recovered from third parties. *Id.* The court noted once again that restitution can be obtained only where there is a "showing of fraud or wrongdoing," and further that a constructive trust was an appropriate remedy only where a breach of fiduciary duty gave rise to an ill-gotten gain. *Id.* at 1248. Neither of these requirements, it concluded, was met "in the typical action seeking contractual reimbursement." *Id.*

In *Great–West Life & Annuity Insurance Co. v. Knudson,* 2000 WL 145374, 2000 U.S.App. Lexis 1771 (9th Cir. Feb. 7, 2000), the Court reaffirmed its holdings in *Owens* and *Ellis* in finding that reimbursement of payments made to a beneficiary of an insurance plan by a third party is not equitable relief within the meaning of § 1132(a)(3).[12]

In *Metropolitan Life Ins. Co., Inc.* ("*Met Life*") *v. Mann,* 2000 U.S. Dist. Lexis 15354 (C.D.Cal. Oct. 16, 2000), insurer Met Life bought the long-term disability operations of another insurer, Allstate, including a group policy which was an employee welfare plan. Met Life was a fiduciary under the plan and Mann an employee eligible for plan benefits. Mann became disabled and received disability

---

*Company, Ltd.,* 794 F.2d 1392, 1394 (9th Cir. 1986)).

**12.** Plaintiff submits that the facts in *Owens, Ellis,* and *Knudson* "are distinguishable from the facts in this case, because those cases involved an analysis of subrogation clauses in its ERISA plans." Reply, at 2. Plaintiff states that, "under *Owens,* had the court found that [plaintiff's] plans in fact made it a subrogee, it would have been entitled to money damages." *Id.* Not only is this argument inapplicable to the issue whether money damages can constitute "equitable relief" under ERISA, but

Plaintiff fails to demonstrate that Plaintiff's plans here make it a subrogee, thus entitling it to money damages.

Plaintiff also submits that the facts in *Owens* and *Ellis* are distinguishable because the plaintiffs in those cases alleged "equitable reimbursement instead of restitution and unjust enrichment." Reply, at 3. Again, this distinction is irrelevant to the issue whether and/or when money damages are available under § 1132(a)(3)—an issue these courts directly address. This court is careful to concern itself with addressing the substance of the relief sought, not the label placed upon it.

benefits under the plan. Under the terms of the plan, disability benefits would be reduced by the amount of other income benefits, such as social security, a plan beneficiary received. Allstate agreed, however, to forego reducing Mann's benefits by the amount of his future social security payments if Mann promised to repay all amounts he received from the plan over the amount to which he was entitled once he began receiving Social Security benefits. Mann agreed and executed an agreement. Mann's social security benefits were delayed. Each time Mann notified Allstate or Met Life of the delayed receipt of social security benefits, the fiduciaries would postpone reducing his disability benefits. Each time Mann renewed his promise to reimburse Met Life. Mann never reimbursed Met Life. Met Life then brought suit against Mann for enforcement of the plan provision pursuant to 29 U.S.C. § 1132(a)(3), restitution pursuant to § 1132(a)(3), and unjust enrichment. Met Life argued that the benefits paid to Mann were an "ill-gotten" gain because they were paid contrary to the terms of the Plan, and Mann induced their payment by entering into an reimbursement agreement he had no intention of honoring. Mann moved to dismiss. The court granted Mann's motion to dismiss, finding, *inter alia*, that Met Life failed to plead claims for "other equitable relief" under ERISA. The court found that Met Life was not entitled to restitution in the form of monetary relief as there was no evidence that Mann had engaged in any "fraud or wrongdoing."

■ Here, Plaintiff does not allege that Defendant engaged in fraud or wrong-do-

ing. Nowhere in Plaintiff's First Amended Complaint, nor anywhere in the court record, does Plaintiff suggest that Defendant tricked Plaintiff into entering into the SLAs, or even that Defendant had any intention of breaching the terms of the agreements when he signed them. Thus, it appears that what Plaintiff seeks is in fact a breach of contract claim,[13] albeit under the label of "equitable relief of restitution and unjust enrichment." The observation of the Ninth Circuit in *Owens* is applicable here: "although they often dance around the word, what [Plaintiff] in fact seek[s] is nothing other than compensatory damages—monetary relief for all losses their plan sustained .... Money damages are, of course, the classic form of legal relief." *Owens*, 122 F.3d at 1261 (citing *Mertens*, 508 U.S. at 255, 113 S.Ct. 2063). Thus, the court finds that Plaintiff is not entitled to the relief it seeks under ERISA § 1132(a)(3). Accordingly, the court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Cross–Motion for Summary Judgment on this issue.

### B. *Alternative Arguments*

In Defendant's Opposition to Plaintiff's Motion for Summary Judgment, Defendant also argues that Plaintiff's Motion for Summary Judgment should be denied because (1) the "Terms and Conditions" of the Apprenticeship Agreement expired one year before Defendant's alleged breach; and (2) genuine issues of material fact exist about the validity of the SLAs. As the court has granted Defendant's Cross–Motion for Summary Judgment on the issue of available relief under § 1132(a)(3), it

---

**13.** Defendant argues that "[w]hat plaintiff really wants is an award of contract damages, something the Court cannot award under ERISA." Cross–Motion, at 5. Indeed, in Plaintiff's First Amended Complaint, filed August 4, 2000, Plaintiff states that "[t]his is an action for repayment of loans pursuant to [SLAs] entered into between Plaintiff and Defendant." First Amended Complaint, at ¶ 3. Plaintiff further states that "Defendant breached the [SLAs'] covenant." First Amended Complaint, at ¶ 6.

need not address these alternative arguments.[14]

### C. Attorney's Fees and Costs

■ Defendant seeks an award of attorney's fees and costs. Section 1132(g) provides that "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g). The factors to be considered in determining whether to award attorney's fees are: (1) the degree of the opposing party's culpability or bad faith, (2) the ability of the opposing party to satisfy an award of fees, (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances, (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA, and (5) the relative merits of the parties' positions (collectively "Hummell factors"). *S.A. McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1172 (9th Cir.1999) (citing *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980)). These factors are intended to guide the court's exercise of its discretion, *Paddack v. Morris*, 783 F.2d 844, 846 (9th Cir.1986), but none "is 'necessarily decisive[.]' " *Id.* (quoting *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir.1984)). "Recovery of attorney's fees does not necessarily depend upon the outcome." *S.A. McElwaine*, 176 F.3d at 1172 (citing *Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382, 387 (9th Cir.1994)). However, the Ninth Circuit has cautioned that there is a "general disfavoring of attorney fee awards in ERISA cases." *San Francisco Culinary, Bartenders and Service Employees Welfare Fund v. Lucin*, 76 F.3d 295, 297 (9th Cir.1996).

■ Applying the Hummell factors, the court considers each in turn. The first factor supports denying an award of fees to Defendant. The court does not find any evidence in the record that Plaintiff is culpable or has acted in bad faith. The second factor is the only factor supporting an award of attorney's fees to Defendant, as Plaintiff is more likely able than Defendant to pay a fee award. The third factor is neutral for the court in determining whether to award attorney's fees. The deterrence factor of an attorney's fee award is generally aimed at protecting participants in employee benefit plans against the abuses or administrative failures of the plan, circumstances which are not present here. The fourth factor supports denying attorney's fees to Defendant. There is no evidence, and neither is it argued, that Defendant, in defending this action, has sought to benefit all beneficiaries similarly situated. Moreover, Plaintiff, in bringing this action, has helped resolve a significant legal question regarding ERISA. Finally, the fifth factor, in light of the general disfavoring of attorney's fees in ERISA actions, supports denying attorney's fees to Defendant. Certainly, Defendant's position has proven to have greater merit. However, this does not imply that Plaintiff's position is meritless. Although the narrow issue this court has addressed herein may appear evident, the law as applied to the instant facts is less than clear. In light of disagreements among the circuits as well as strong policy arguments in favor of Plaintiff's position, the court finds Plaintiff reasonable in litigating its claims.[15] Thus, *in toto*, the

---

14. The court notes that Plaintiff does not respond to these arguments in its Reply.

15. Defendant, in arguing for an attorney's fee award, asserts that Plaintiff has acted in bad faith in bringing the instant action. Defendant states that Plaintiff has violated Fed.R.Civ.P. 11 and thus he should not have to "bear the expense of plaintiff's frivolous ERISA action." Defendant asserts that "[Plaintiff] knew it had

Hummell factors weigh against an award of attorney's fees to Defendant. Accordingly, and in its discretion, the court DENIES an award of attorney's fees to Defendant.

### CONCLUSION

Based on the foregoing, the court DENIES Plaintiff's Motion for Summary Judgment and GRANTS IN PART and DENIES IN PART Defendant's Cross–Motion for Summary Judgment. The court GRANTS Defendant's request for summary judgment in that Plaintiff is not entitled under ERISA to the relief it seeks, but DENIES Defendant's request for attorney's fees.

IT IS SO ORDERED.

---

*no* evidence to establish a claim for equitable relief of the type unquestionably required under Ninth Circuit law.... Knowing it had no claim, why did it choose to put plaintiff through the expense and ardor of litigation. A state court action brought by plaintiff on the agreements was earlier dismissed on jurisdictional grounds. The import of [*Owens, Knudson,* and *Ellis* ], however, was fully brief [sic] therein and their holdings asserted as an alterative ground for dismissal." Opposition, at 13–14. However, defendant has not filed a separate motion for sanctions pursuant to Rule 11. *See* Fed.R.Civ.P. 11(c)(1)(A). Thus, to request fees pursuant to Rule 11 at this time is inappropriate.